Battle, J.
 

 Two questions ai’e presented by the bill of exceptions.
 
 First:
 
 Whether in the issued joined, upon the plea of justification, the dying declarations of Jacob Britt could be given in evidence by the defendant, to prove the truth of the words for which the action was brought ?
 
 Secondly :
 
 Whether his Honor was right in refusing to instruct the
 
 *42
 
 jury that the defendant must sustain his plea by the same cogency of proof as would be required against the plaintiff, were he on trial- for his life, under a charge of murder; but on the contrary, saying to them that a preponderance of evidence, as in a civil case, -was all that was necessary.
 

 The first question is raised by the plaintiff’s exceptions to the admission of the testimony, and we think the exception is well founded. The reasons by which his Honor’s decision was influenced are not stated, and we do not know that he felt himself bound by the case of
 
 McFarlane
 
 v. Shaw, 2 Car. L. Rep. 102; or whether he thought the issue before him was the same as it would have been had the plaintiff been on trial for the murder of Jacob Britt, and that therefore this was an exception to the general rule, that dying declarations are not
 
 per se
 
 admissible in civil cases. We, say
 
 per se,
 
 because where dying-declarations constitute part of^íhC
 
 res gestee,
 
 or come within the exception of declarations against interest, or the like, they are admissible, as in other cases, irrespective of the fact that the declarant was under the apprehension of death. 1 Greenlf. Ev. sec. 156. Whether the decision was influenced by the one reason or the other, or by both combined, we are satisfied that it is not supported by principle, while it is opposed by the whole current of the recent cases in England and in this country.
 

 The case of
 
 McFarlane
 
 v.
 
 Shaw,
 
 was decided by the Supreme Court under its former organization, in the year 1815. The action was by a father for the seduction of his daughter : the defendant pleaded not guilty, and on the trial, the plaintiff, to prove the seduction, offered to show that after all hope of life was gone, his daughter, who was then sick in child-bed, desired that the defendant might be sent for; and upon being-informed that he would not see her, exclaimed, “ I am going: he will soon go too, when he will be obliged to see me, and will not dare to deny the truth.” The testimony was objected to, but received by the Court; and the case came before the Supreme Court on a motion for a new trial: The Court, after stating that such testimony was admissible in certain criminal
 
 *43
 
 cases, in which life was at stake, contended that, though they had no precedent to guide them, it ought, from reason and analogy, to be admitted in a case like the one before them; but they grounded themselves chiefly on the circumstance, “ that the fact disclosed in her declaration could only be proven by herself: she was the inj ured party through whom the cause of action arose to the father.” The Court then say further, “ we give no opinion how far the dying declarations of an indifferent person, not receiving an injury and not a party to the transaction, would be evidence in a civil case. . Our decision is confined to the state of facts presented in this case.” It is manifest that the Court labored under the impression, which then generally prevailed, that dying declarations were admissible upon the general principle “ that they are declarations made in extremity, when the party is at the point- of death, and when every hope of this world is gone: when every motive to falsehood is silenced, and the mind is influenced by the most powerful considerations to speak the truth : a situation so solemn and so awful is considered by the law as creating an obligation equal to that which is imposed by a positive oath in a court of justice.” If the admission stood upon this general principle alone, it might well have been contended, as it was contended, that dying declarations ought to be admitted in all cases, civil as well as criminal. But another clement in the test of truth was overlooked by those who insisted upon this latitude of admission, to wit: the opportunity of confronting and cross-examining the declarant. The privilege of cross-examination has been carefully secured to the party, to be affected by them, in depositions taken before magistrates, and the testimony of deceased witnesses on a former trial. The importance of preserving it, has no doubt restricted the admission of dying declarations to the criminal cases only “ where the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the declarations.” Such delarations, then, are admitted “upon the ground of the public necessity of preserving the lives of the community by bringing man-slayers to justice. For it
 
 *44
 
 often happens that there is no third person present to be an eye witness to the fact, and the usual witness in other cases of felony, namely, the injured party, is himself destroyed.” See Cowen and Hill’s notes to Phil, on Ev., pt. 1, 610; 1 Greenlf. on Ev., sec. 156, and the cases there cited. The print ciple of admission, being thus restricted, necessarily overrules the case of
 
 McFarlane
 
 v.
 
 Shaw,
 
 and shows that even if the issue be, as in this case, whether the plaintiff murdered the deceased, the dying declarations cannot be heard, because such issue is joined in a civil case.
 

 As the plaintiff is entitled to a
 
 venire de nbv&
 
 for the error in admitting improper testimony, we might abstain from expressing an opinion upon the second question; but as that question may and probably will be raised upon the next trial, we will, for the guidance of the parties, state now the view which we have taken of it.' We think his Honor was clearly right in declining to give the instruction prayed: “ that to sustain the plea of justification, it was necessary that the jury should have the same cogency of proof they would require in case the plaintiff were on trial for his life.” To such an instruction the case of
 
 Kincaid
 
 v. Bradshaw, 3d. Hawks, 63, was directly opposed: it being held there, that in an action for slander, in charging a plaintiff with perjury, the defendant is not bound, in support of his plea of justification,'to produce such evidence as would be requisite to conviet the plaintiff, if ,he were on trial’for the offence : Tatloe, C. X, in delivering the opinion of the court, concludes the argument thus : “It cannot, therefore, be a correct rule that a jury should require the same strength of evidence to find the fact controverted in a civil case, which they would require to find a man guilty of a crime; but the crime of perjury stands upon peculiar grounds and requires more evidence to produce conviction than crimes in general: one witness is not sufficient, because then there would be only one oath against another. A man knowing another to have committed perjury, may forbear to prosecute him, for the very reason that there is but one witness by whom the crime can be proven: Shall he,
 
 *45
 
 therefore, be deprived of his justification if sued in an action of slander, although he might be famished with convincing evidence of the truth of the words? Both reason and authority answer in the negative.” The authority relied on was the case of the
 
 Queen
 
 v.
 
 Muscot,
 
 10 Mod. Rep., 192, where the Chief Justice, PabKeb, expressed himself in similar terms.
 

 After declining to give the instructions prayed, his Honor told the jury “that a preponderance of evidence, as in a civil case, was all that was necessary.”' If the very language used by his Honor is correctly set forth, it must be confessed that it is not very perspicuous, and on that account not much calculated to enlighten the minds of the jury. The case on trial was a civil case, and it could afford the jury very little assistance to make it the standard of itself. But we suppose that the words “ any other ” were omitted by mistake in making out the transcript, and that a fair interpretation of the charge, taken in connection with the refusal to give that which was asked, is, that the party upon whom lay the
 
 omcs prohcmdi
 
 must produce such a preponderance of testimony as must satisfy the jury of the truth of his allegation, as he would have to do in any other civil case. If this be the meaning of the charge, it is directly sustained by the case of
 
 Neal
 
 v.
 
 Fesperman,
 
 decided at the last June Term, 1 Jones’ Rep. 446. In that case the Court say in conclusion “ how far
 
 vn, favorem vites
 
 this matter is to be extended so as to require the court in a capital case, when the evidence of guilt is direct,- to charge the jury that they must be satisfied beyond a rational doubt, that is, that they should not have a rational doubt of the truth of the evidence, or the credibility of the witnesses, we are not now to say : suffice it, in civil cases, if the jury are satisfied from the evidence that an allegation is true in fact, it is their duty so to find, and they should be so instructed.” It is unnecessary to pursue the discussion further, as we think we have said enough to prevent the recurrence of an error, if any was committed upon the second point made in the case. For the error committed in the admission of improper testimony, there must be a
 
 venire de novo.
 

 Pee Cubiam.
 
 Venire de novo.