[No. 4922.   Decided September 21, 1904.]

## A. R. BYRKETT et al., Appellants, v. JAMES E. GARDNER, Respondent.[1]

FORCIBLE ENTRY AND DETAINER—NOTICE TO QUIT—FARMING LEASE—DEFAULT IN PERFORMANCE—SPECIFYING CONDITIONS BROKEN. Where a farm lease provided that the land should be farmed in a certain specified manner, the lease containing many stipulations with reference to the lessee's performance, a notice to quit, requiring in the alternative the performance of the conditions and covenants of the lease or a surrender of the premises, which recites many of the covenants and states that the tenant has failed to keep "each and all" of the covenants mentioned, is too indefinite and uncertain to support an action of forcible entry and detainer, under Bal. Code § 5527, subd. 4, since a notice

[1]Reported in 77 Pac. 1048.

thereunder must specify with particularity the default so as to give the tenant an opportunity to exercise his right of choice.

SAME.    Where the landlord is complaining that the general performance is not up to the standard of excellence called for by the covenant to farm in a husbandlike manner, such a notice reciting that fact generally is not sufficient to start the machinery of the statute of forcible entry and detainer.

SAME—RENT DUE.    Such a notice is not sufficient as showing nonpayment of rent, under Bal. Code, § 5527, subd. 3, where there is the same indefiniteness with reference to the rent that is due, and there is no chance for the lessee to save the forfeiture by payment within ten days.

SAME—WASTE.    Such a notice does not show waste, within subd. 5, of the same section, by the mere failure to farm the lands in a husbandlike manner or keep fences in repair, since waste is an act of destruction by the tenant.

Appeal from a judgment of the superior court for Klickitat county, A. L. Miller, J., entered August 19, 1903, upon sustaining a demurrer to the complaint, dismissing an action of forcible entry and detainer.    Affirmed.

*Huntington & Wilson,* for appellants.

*A. A. Jayne* and *Bennett & Sinnott,* for respondent.

FULLERTON, C. J.—In January, 1901, the appellants leased to the respondent a portion of their ranch situated in Klickitat county, for a term of four years, commencing on the 1st day of February, 1901.    Among the conditions of the lease, to be kept and performed on the part of the respondent, were the following:

"1st.    To cultivate all of said premises in a good and husbandlike manner, in such crops, fruits, and vegetables as may be mutually agreed upon.    2nd.    To provide feed for, feed, milk, and care for in all respects all the milk cows, and to provide feed for, feed, and care for all the stock now on said ranch and the increase thereof and at the expiration of the first year of this lease, return them to the parties of the first part, in good condition.    To put in

repair and keep in repair all tools, farming implements, machinery, and dairy supplies and at the expiration of the first year of this lease return them to the parties of the first part in good condition, natural wear excepted. To make butter from said cows and to deliver to the parties of the first part one-half thereof wrapped in two pound rolls with the brand paper of said ranch. To deliver in the barns upon said ranch or other buildings thereon one-half of all crops grown upon said premises over and above that necessary for feed for the stock thereon, baled when hay, and in proper packages for shipment. When crops raised on the premises included in the one year term of this lease require sacks for shipping each party is to furnish his own one-half of said sacks. To repair all fences and build all new ones necessary for the protection of crops on said premises, out of materials provided by parties of the first part. To haul out and distribute all manure upon said ranch. To furnish one-half the labor for laying drain pipes, tiles, etc., for drainage and irrigation of lands, included in the four years term of this lease. To furnish one-half the hogs kept upon said premises, provide feed for them, butcher and market them and pay the first parties one-half of the price they bring. To take said cattle to Trout Lake, about May 1st, and keep them there until about October 1st. 3rd. To plant, cultivate, pick, pack, box, and ship all berries raised upon said premises and after deducting the cost of the boxes and of picking, and packing, to divide the residue of the proceeds of the sale thereof equally with the first named parties. 4th. To plant, cultivate, pick, pack, box, crate, or otherwise provide for shipment, and ship all melons, vegetables, etc., grown upon the lands covered by the four years term of this lease, and pay over to the parties of the first part one-third of the gross proceeds of the sale thereof. 5th. To at the earliest date possible, set out the ground heretofore farmed to strawberries, in strawberries, and also so much of the peach orchard as may be pulled out for that purpose, and to keep all of said lands and the lands now set to strawberries, in strawberries during the continuance of this lease. To replant said lands in strawber-

ries at the expiration of three years of life and bearing. To can, jelly, jam or make into wine all berries and vegetables when it is found advantageous to both parties hereto."

On the 21st day of May, 1903, the lessors served on the lessee a notice which after reciting the execution of the lease above mentioned proceeded as follows:

"To James E. Gardner; In and by the lease above mentioned, you covenanted and agreed, among other things: 'To cultivate all of said premises in a good and husbandlike manner in such crops, fruits, and vegetables as may be mutually agreed upon. To repair all fences and build all new ones necessary for the protection of crops on said premises, out of material provided by the parties of the first part. To plant, cultivate, pick, pack, box, and ship all berries raised upon said premises, and after deducting the cost of the boxes and of picking and packing, to divide the residue of the proceeds of the sale thereof equally with the first named parties. To plant, cultivate, pick, pack, box, crate, or otherwise provide for shipment and ship all melons, vegetables, etc., grown upon the lands covered by the four years term of this lease and pay over to the parties of the first part one-third of the gross proceeds of the sale thereof. To at the earliest date possible set out the ground heretofore farmed to strawberries, in strawberries, and also so much of the peach orchard as may be pulled out for that purpose, and to keep all of said lands and the lands now set to strawberries in strawberries during the continuance of this lease. To replant said lands in strawberries at the expiration of three years of life and bearing. That in case any controversies arise as to the meaning of this lease, or as to the faithful performance thereof by either party, S. C. Ziegler shall be the arbitrator between us to settle said controversy, whose decision shall be final.'

"Immediately upon the execution of said lease, it was mutually agreed by you and by us, the said A. R. Byrkett and Clara Byrkett, that you should cultivate to melons and other vegetables all of said land so leased for the term of four years, except such as had been and were to be culti-

vated to strawberries and blackberries. Subsequently to the execution of the written agreement of lease, it was further mutually agreed by you and by us, the said A. R. Byrkett and Clara Byrkett, that the proceeds of all crops sold outside of the state of Washington, and which were raised upon said lands leased to you for the term of four years, as aforesaid, should be deposited in the Bank of Butler & Company of Hood River, Oregon, to the credit of Byrkett and Gardner. You are hereby notified that we, the said A. R. Byrkett and Clara Byrkett, are now and at all times since the execution of said lease have been prepared, ready, and willing to provide, and have provided material for the fences necessary for the protection of crops grown upon said leased premises. You have failed to keep and perform each and all of the covenants and agreements hereinbefore mentioned. You are hereby notified to keep and perform each and all of the agreements and covenants contained in said written lease and said subsequent agreements hereinbefore specifically mentioned, or surrender the possession of said property. And if you fail so to keep and perform said covenants and agreements or surrender possession of said premises within ten days after the service of this notice upon you, we, the said A. R. Byrkett and Clara Byrkett will commence an action against you for the unlawful detainer of said premises."

Later on, the precise date not being shown by the transcript, the appellants began an action of unlawful detainer. In their complaint, for a first cause of action, they set forth the lease above mentioned and alleged that the respondent had failed to keep and perform its conditions, specifying certain acts and omissions of the respondent as constituting breaches thereof. They further alleged the service of the notice above recited on the respondent, his failure to comply with the terms of the lease after such notice, and his failure to quit and surrender possession of the premises within ten days from the date of such service. For a second cause of action, the appellants repeated the

allegations of their first cause, and added an allegation as
to the rental value of the premises, alleging that the rental
value thereof was two thousand dollars per annum. The
demand of the complaint was for a forfeiture of the lease,
the restitution of the premises to the appellants, and for
the rental value of the premises from February 1, 1901, at
the rate of two thousand dollars per annum.

The respondent interposed a general demurrer to each of
the causes of action set out in the complaint, which the
trial court sustained. The appellants thereupon refused
to plead further, whereupon the court entered a judgment
dismissing their action. This appeal is from that judg-
ment.

The statute of forcible entry and detainer (§ 5527, Bal.
Code) provides that a tenant of real property is guilty of
unlawful detainer:

"(3). When he continues in possession in person or by
subtenant after a default in the payment of any rent and
after a notice in writing requiring in the alternative the
payment of the rent or the surrender of the detained prem-
ises, served (in manner hereafter in this chapter provided)
in behalf of the person entitled to the rent upon the per-
son owing the same, shall have remained uncomplied with
for the period of three days after service thereof. Such
notice may be served at any time after the rent becomes
due; or

"(4). When he continues in possession in person or by
subtenant after a neglect or failure to keep or perform any
other condition or covenant of the lease or agreement under
which the property is held, including any covenant not to
assign or sublet, than one for the payment of rent, and after
notice in writing requiring in the alternative the per-
formance of such condition or covenant or the surrender
of the property, served (in the manner provided in this
chapter) upon him, and if there be a subtenant in actual
possession of the premises, also upon such subtenant, shall
remain uncomplied with for ten days after service thereof.

Within ten days after the service of such notice the tenant, or any subtenant in actual occupation of the premises, or any mortagee of the term, or other person interested in its continuance, may perform such condition or covenant, and thereby save the lease from such forfeiture; or

"(5). When he commits or permits waste upon the demised premises, or when he sets up or carries on therein or thereon any unlawful business, or when he erects, suffers, permits, or maintains on or about said premises any nuisance, and remains in possession after service (in manner in this chapter provided) of three days' notice to quit upon him."

When the nature of the case is considered, it is at once apparent that, in so far as the action is founded on the fourth subdivision of the statute quoted, the case turns on the sufficiency of the notice to quit. If the breaches of the conditions of the lease, upon which the lessors rely to work its forfeiture, are recited in the notice in terms too general, or too indefinite and uncertain, to inform the lessee of the acts or omissions constituting the breach, so that he can have no opportunity to correct the acts or supply the omissions, it is plain that no sufficient complaint of unlawful detainer can be founded thereon. The notice cannot be aided by particularity in the complaint. The lessee is given, by the statute, the alternative of complying with the conditions and covenants of the lease, or quitting the premises, and in order to give him the opportunity to exercise his right of choice, the notice must specify with particularity the conditions and covenants which he has failed to keep or perform; a general recital of the conditions and covenants of the lease, followed by the statement that the lessee has failed to keep "each and all" of such conditions and covenants, cannot be sufficient.

Tested by these rules, the notice served on the respondent will not support an action of unlawful detainer under the fourth subdivision cited. It specifies no particular default.

It does not point out any act which the lessee could perform within the specified time and thus prevent a forfeiture. It is, indeed, but a general recital of the conditions of the lease, and a claim that a breach has been made in the performance of each and every condition. As it is elsewhere in the complaint made clearly to appear, the appellants are not complaining so much of the failure to perform any particular condition, as they are complaining that the general performance of the conditions did not reach the standard of excellence that, in their opinions, it ought to have reached. Inasmuch as the lessee agreed to perform the several conditions of the lease in a good and husbandlike manner, doubtless a failure to so perform would be such a breach of the conditions and covenants of the lease as to authorize this form of remedy. But a notice reciting that fact generally is not sufficient to put in motion the machinery of the statute. The notice must point out the defects with such particularity that the court can say there is reasonable grounds for believing there has been a breach of the conditions of the lease. The facts constituting the breach must be stated; the lessor cannot be both suitor and judge.

Considered, therefore, with reference to the causes for declaring a forfeiture of a lease provided for in the fourth subdivision of the statute above quoted, the notice is, as we say, insufficient upon which to found the action of unlawful detainer. The appellants, however, contend that the notice shows both a nonpayment of rent, and the commission of waste on the demised premises, on the part of the lessee, and that the notice is good under the third and fifth subdivisions of the statute above quoted. It may, we think, be doubted whether the failure to perform conditions such as those mentioned in the lease can be said to be not paying rent as that term is used in the statute, but con-

ceding it to be so, there is the same indefiniteness with reference to that clause that there is with reference to the others. It cannot be ascertained how much the lessors claimed to be due, whether it was ten, or ten thousand dollars, and there was no possible chance for the lessee to save a forfeiture by the payment of the rent within the ten days allowed by the statute. To claim a breach for the non-payment of rent, the notice must specify the amount claimed to be due, so that it can be paid and a forfeiture abated, if the party owing the rent so desires it. The option is with the lessee, and the notice must be sufficiently definite to enable him to avail himself of it.

The acts recited in the notice do not constitute waste. Waste is some act which tends to the destruction of the tenement. To fail to farm lands in a good and husband-like manner or to keep in repair fences thereon, is not waste, however much it may lessen the income derived from the land.

The judgment appealed from is affirmed.

MOUNT, DUNBAR, and ANDERS, JJ., concur.