[No. 8174.  Department Two.  June 21, 1910.]

J. H. BRUFF, *Respondent*, v. NORTHWESTERN MUTUAL FIRE ASSOCIATION, *Appellant*.[1]

INSURANCE—LOSS BY FIRE—DEFENSES—INCENDIARISM—EVIDENCE—SUFFICIENCY.  In a civil action to recover insurance money the defense of incendiarism only requires a fair preponderance of the evidence, and there is sufficient evidence to require the submission of the same to the jury, where it appears that the plaintiff had the building and contents insured in his own interest, that he was alone at the house early in the evening and left, spending the night with a friend, that a "flash" fire occurred about 4: 00 a. m. and the firemen found the house intact, securely closed up, with coal oil distributed about the house in vessels, on the furniture and clothes, and the plaintiff claimed to have recently purchased and lost in the fire an unusual amount of valuable clothing and was unable to give the names of the merchants from whom it was purchased.

Appeal from a judgment of the superior court for Yakima county, Kauffman, J., entered December 9, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a fire insurance policy.  Reversed.

*Shank & Smith* and *Wende, Taylor & Delle*, for appellant.
*Henry J. Snively*, for respondent.

CROW, J.—This action was commenced by J. H. Bruff against the Northwestern Mutual Fire Association, a corporation, to recover $500 on an insurance policy.  From a verdict and judgment in plaintiff's favor, the defendant has appealed.

The policy was written on personal property located in respondent's residence in North Yakima.  He alleged ownership of the property in himself, and its destruction by fire.  Appellant affirmatively pleaded that the fire was of incendiary origin; that on June 13, 1907, respondent caused the dwelling house and contents to be burned, so as to procure

[1]Reported in 109 Pac. 280.

the insurance, and now contends that the trial court erred in withdrawing this affirmative defense from the considera-tion of the jury.

The respondent, a single man, lived alone in a one-story, four-room dwelling house in which the insured personal prop-erty was located. The policy was for $500, and he held a separate policy on the building. In his proofs of loss he presented a claim for personal wearing apparel and two Turkish covers amounting to $454.50, as follows:

"36 suits of underwear....................... $77.50
33 shirts ............................. 33.00
14 fancy vests ....................... 49.00
7 suits of clothing.................... 145.00
3 pairs of odd pants.................. 15.00
6 night gowns ...................... 15.00
6 gowns—sleeping .................. 6.00
1 doz. silk handkerchiefs.............. 9.00
2 Turkish covers .................. 33.00
                                   ———————
                                   $454.50" .

He testified that their original cost was $638; that in December, 1906, he purchased thirty-six suits of underwear, twenty-four silk and mohair shirts, three suits of clothes, and nine fancy vests, in Spokane, on one and the same date, but was unable to tell the merchant or merchants from whom the purchases were made. He further testified that the greater portion of this wearing apparel was upon a clothes-line or rope stretched diagonally across the particular room where the greatest destruction by fire occurred; that he was at the house a short time during the early hours of the even-ing preceding the fire; that he passed the night sleeping with a friend in another part of the city, and that he learned of the fire the next morning.

There was evidence that the fire occurred about 3:55 a. m.; that immediately after it was under control the firemen dis-covered in an enclosed hall a five-gallon can containing coal oil; that there was a stoneware slop jar in the hall partially

filled with water, with coal oil on the top of the water; that an ordinary dresser was in an adjoining bedroom, in the upper drawer of which were two shirts saturated with coal oil, and some paper also saturated with coal oil; that the dresser drawers were covered with coal oil; that in the bedroom was another slop jar containing water and coal oil; that at the time of the fire no one was in the house; that the doors were securely fastened; that the window shades in the front room were drawn and tacked down, and that the fire was what the firemen termed a "flash fire," indicating that it was of incendiary origin. There was no evidence that any other person had been in or about the building after respondent left it during the preceding evening.

The circumstances shown strongly indicate that the house had been deliberately and purposely prepared for a sudden, destructive, and well-timed conflagration. Respondent held separate insurance policies on the house and its contents, and was the only person in a position to recover for losses resulting from the fire. There was sufficient evidence, if accepted and credited by the jury, to sustain them in finding that the fire was of incendiary origin, and that some one who had access to and was familiar with the premises had deliberately arranged the house and its contents for destruction by fire. The respondent was the only person who lived in, or had constant access to, the house. He was there early in the evening, and left the building securely fastened. There was no evidence of any breaking prior to the arrival of the firemen. They found everything intact and well secured. The respondent testified that he passed the night with a friend, who corroborated his statements, but the weight and credibility of this evidence was for the exclusive consideration of the jury. Although the fire commenced at an early hour in the morning, arrangements might have been made causing it to ignite at that time. We do not assume that such plans were adopted, yet circumstances of a damaging nature, such as the condition of the house, the presence of the coal oil in

so many places, the well-timed absence of the respondent, the character of the fire, and other facts shown by the record, tend to implicate the respondent. Ordinarily it might not be suspicious for a single man living alone, in a small, plainly furnished house, not shown to have any particular means, to possess the quantity and quality of valuable clothing the respondent is claimed to have lost; yet the alleged possession of, and the claim for, such clothing were circumstances the jury should have been permitted to consider, in connection with the other facts, to aid them in deciding whether there was any motive which might induce the respondent to cause the fire.

The respondent, citing *State v. Pienick*, 46 Wash. 522, 90 Pac. 645, 11 L. R. A. (N. S.) 987, contends that the proof was not sufficient to show the fire to have been of incendiary origin. That is not a similar case. This is a civil action, in which a fair preponderance of the evidence only is necessary to establish the defense pleaded. In the *Pienick* case the defendant was prosecuted under an information charging the crime of arson, and it devolved upon the state to prove the alleged crime and its commission by the defendant beyond a reasonable doubt by evidence sufficient for that purpose. This court held that no motive was shown on the part of the defendant for the commission of the alleged crime, and that the proof was insufficient to sustain the charge that the fire itself was of incendiary origin. The rule as to the amount of proof necessary to establish the defense of incendiarism in a civil action on a fire insurance policy is well stated in such an action, and strongly fortified by the citation of numerous authorities in *Blackburn v. St. Paul Fire & Marine Ins. Co.*, 116 N. C. 821, 21 S. E. 922, in the following language:

"The charge of the court upon the 8th and 9th issues is not entirely clear, but it in effect amounts to an instruction that the defendants must show the conspiracy between the plaintiffs to burn and also the burning by W. A. Blackburn

'beyond a reasonable doubt,' for the court instructed the jury that there was a presumption of innocence and that they must find 'that there was no reasonable hypothesis consistent with the innocence of the plaintiffs' and that it is not sufficient 'that the facts and circumstances relied upon to establish the truth of the charge are consistent with it. They must be inconsistent with his innocence.' This is not the correct rule in civil actions which have nothing to do with guilt and innocence. The burden was upon the defendants as to these two issues to prove their allegations, by the preponderance of the evidence, but not beyond a reasonable doubt. It is true the authorities in other states are conflicting, but this is the general rule in civil actions and our courts have seen no reason to depart from it. *Kincade v. Bradshaw*, 10 N. C. 63; *Barfield v. Britt*, 47 N. C. 41; *Outlaw v. Hurdle*, 46 N. C. 150. Both reason and the weight of authority, especially the later cases, sustain the proposition, that 'in an action on a policy of insurance against fire, when the defendant pleads that the property was fraudulently burned by the plaintiff the defendant is not bound to prove such defense beyond a reasonable doubt.' "

We think that the affirmative defense pleaded, and the evidence tending to show the destruction of the property by a fire of incendiary origin, and to connect the respondent therewith, should have been submitted to the jury for their consideration.

The judgment is reversed, and the cause remanded for a new trial.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.