[No. 12020. Department Two. January 19, 1915.]

CHARLES D. KING *et al., Respondents*, v. GEORGE F. KING *et al., Appellants.*[1]

APPEAL—BRIEFS—REFERENCE TO RECORD—DISMISSAL. An appeal will not be dismissed for failure of the appellants' brief to refer to the statement of facts or abstract, where the respondents' brief is equally faulty.

SAME—RECORD—ABSTRACT. An abstract of the evidence need not quote the evidence, if it is stated in clear, narrative form with reasonable fullness.

SAME—RECORD—ABSTRACTS—INSTRUCTIONS. An appeal will not be dismissed for failure of the abstract to contain any of the instructions except those complained of, where the other instructions as set out in respondents' supplemental abstract did not modify or control the instructions complained of.

LANDLORD AND TENANT—EVICTION—ACTION—DEMAND. In a tenant's action for eviction and wrongful conversion of property, demand for restoration is not essential, where the landlord had served notice of forfeiture rescinding the lease, taken possession, and the evidence showed that the demand would have been futile, and there was sufficient evidence to go to the jury on the question of eviction and conversion.

SAME—EVICTION—MEASURE OF DAMAGES. In the absence of proof of special damages, the measure of damages for a wrongful eviction is the difference between the market rental value of the premises for the unexpired term of the lease and the rent reserved therefor.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. An instruction, in an action for wrongful eviction that plaintiff could recover the value of the use of the premises for the period he had paid rent beyond the eviction, while abstractly erroneous, is not prejudicial to the landlord, where the proof showed that the plaintiff had paid rent for but ten days beyond the eviction, and there was no evidence of the market rental value for the unexpired term.

LANDLORD AND TENANT—EVICTION — ISSUES AND DEFENSES — INSTRUCTIONS. In an action for wrongful eviction, upon an affirmative defense and counterclaim that plaintiffs or their agent had set fire to the building to defendants' damage, it is error to give an instruction confining the evidence touching the fire to the sole office of proving the counterclaim, and inferentially eliminating the

[1]Reported in 145 Pac. 971.

defense, where there was evidence clearly relevant tending to prove the affirmative defense, even if insufficient to establish the counterclaim.

SAME—EVICTION—DEFENSES—EVIDENCE—QUESTION FOR JURY. In an action for wrongful eviction, upon an issue as to whether the plaintiffs or their agent had set fire to and injured the building, the question is for the jury, where there was evidence that the fire was of incendiary origin, deliberately arranged by someone who lived in or had access to the house, and to the locked rooms containing plaintiffs' effects, and that plaintiffs and one R. were the only persons having such access.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered November 21, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful eviction and for conversion. Reversed.

*George B. Holden* and *Englehart & Rigg,* for appellants.
*Snively & Bounds,* for respondents.

ELLIS, J.—This is an action for damages for wrongful eviction from leased premises and for conversion of personal property.

On December 4, 1912, the defendants, by written lease, demised to the plaintiffs for a term of two years the second floor and the south room of the first floor of a two-story frame building in Toppenish, Washington, known as the "King Rooming House," at a rental of $60 per month. At the same time, the defendants leased and agreed to sell to plaintiffs the furniture and household goods contained in the upstairs for $900, plaintiffs paying $450 down and agreeing to pay the balance in two equal installments as evidenced by two promissory notes for $225 each, due in six and twelve months, respectively. By the second lease and contract of sale, the defendants agreed to execute and deliver to plaintiffs a bill of sale of the furniture upon final payment of the deferred installments and interest.

Under these leases the plaintiffs occupied the premises, and were in possession of the furniture, from December 5,

1912, to April 13, 1913. There was a conflict of evidence as to whether the rent had been paid to April 24, or to May 4, 1913.

Early in the morning of April 13, 1913, a fire was discovered in three inner and adjoining rooms on the second floor. It was of incendiary origin. Holes had been cut in the partition walls and skylights of the rooms. The furniture had been piled on the beds. Coal oil had been poured about each of the rooms, and the bed clothes were saturated with oil. Cans of oil were standing in each room. There were two roomers, Britt and Root, in the house at the time of the fire.

On April 13, 1913, defendant George King caused the arrest of plaintiff Charles King, and the man Root, charging them with setting fire to the building. At the time of the fire, the plaintiff Charles King was visiting with a friend about three miles out of the city, having left the house in Root's charge about 6:30 o'clock on the prior afternoon. His wife was in Walla Walla, where she had gone on a visit about ten days previously. There was evidence that, previous to going, she had stated to a friend that she expected trouble and she seemed depressed. Before the fire, her husband sent her fur coat to her. One of the defendants' witnesses testified to seeing valuable silverware and linens in a trunk in one of the rooms. These articles were not in the trunk at the time of the fire. The three rooms in which the fire occurred were securely locked and the only persons permitted to enter them were the plaintiffs and the man Root. The other roomer, Britt, heard no sounds after retiring about midnight until the time of the fire. A hatchet was discovered in an old shed on the premises, having particles of plaster adhering to it of the same tint as that of the walls of the rooms. An apron belonging to the plaintiff Frances A. King was discovered in the kitchen. In a pocket of this were similar particles of plaster. She explained that they must have fallen into her pocket when she was cleaning up after certain

repairs to the plastering in the hallway. The plaintiffs carried insurance on the furniture in the amount of $1,000. The defendants carried no insurance on either the building or its contents. Plaintiff and Root remained in custody until April 23, 1913, when, on preliminary examination, they were discharged and have been at liberty ever since.

There is no direct evidence as to the damage done to the personal property in the building, but the building itself was damaged to the extent of about $500. The sheriff had the keys to the premises from the time of the fire until May 10, 1913, when he turned them over to the defendants. On or about April 24, 1913, the defendant George King and a deputy sheriff nailed up the doors to the building. The plaintiffs made no demand for possession nor any effort to reenter the premises or take possession of the personal property subsequent to the fire. On April 24, 1913, the defendants served notice upon the plaintiffs that, by reason of the plaintiffs' breach of the terms and conditions of the two leases and their attempt to destroy the property, they elected to terminate both leases and take possession of the real estate and personal property and forfeit all payments made by the plaintiffs as liquidated damages. Nothing further was done with the property until in August, 1913, when defendants cleaned up the debris and personally occupied the premises as a rooming house.

On September 11, 1913, the plaintiffs commenced this action, alleging that they were wrongfully evicted from the premises by defendants on April 24, 1913, and that the defendants converted the personal property included in the contract of lease and sale and certain other articles of personal property belonging to plaintiffs not so included, and claiming damages therefor. The defendants denied the allegations of the complaint, and set up, as an affirmative defense and counterclaim, that plaintiffs had attempted to destroy the property by fire and had thereby forfeited their rights under the leases and had abandoned the property, and prayed dismissal

of the plaintiffs' action and judgment for $500, because of damages to the building by fire. At the close of the evidence, both parties moved for a directed verdict in their favor, respectively. Both motions were overruled. The jury returned a verdict in favor of the plaintiffs for $750. The court overruled defendants' motions for judgment *non obstante* and for a new trial. The defendants appeal.

The respondents have moved to dismiss this appeal on the grounds: (1) that all references in the appellants' brief are to the statement of facts and not to the abstract; (2) that the abstract does not refer to the pages of the statement of facts where the particular evidence is to be found; (3) that the abstract is a statement of conclusions rather than a statement of what the evidence actually was; (4) that the abstract does not contain any of the instructions except those upon which claims of error are predicated.

As to the first and second grounds, the respondents are equally derelict with the appellants. Their brief contains no reference to either abstract. Their supplemental abstract contains no reference to the statement of facts. We would not be justified in punishing the appellants alone for a fault shared equally by the respondents.

The third ground is not well taken. The appellants' abstract, it is true, does not quote the evidence, but states it in a clear, narrative form with reasonable fullness.

As to the fourth ground, it is true the abstract contains only those instructions upon which claims of error are predicated, but an examination of all the instructions as set out in respondents' supplemental abstract convinces us that the instructions complained of are in no manner modified or controlled by other instructions. The motion to dismiss is denied.

On the merits, the appellants have advanced many claims of error. They may be grouped for convenient discussion as follows: (1) that the evidence was insufficient to sustain the verdict; (2) that the court erred in instructing as to the

measure of damages for the eviction; (3) that the court erred in withdrawing from the jury the appellants' affirmative defense.

(1) It is claimed that the evidence was insufficient to sustain the verdict in that it showed no eviction from the leasehold nor any conversion of the personalty by the appellants, but on the contrary showed an abandonment by the respondents. The argument in support of these claims is based mainly upon the fact that respondents made no demand for a restoration of possession. We think, however, that the fact that appellants' notice, claiming a forfeiture of the lease and rescinding the sale of the personalty, was served upon the respondent Charles King very soon after his discharge from arrest sufficiently explains. respondents' failure to make demand. There was also much other evidence tending to show that any demand for possession of either the realty or the personalty would have been futile. There was ample evidence to take the questions of eviction and conversion to the jury. *Hyman v. Jockey Club etc. Co.*, 9 Colo. App. 299, 48 Pac. 671; *Skally v. Shute,* 132 Mass. 367; 2 Tiffany, Landlord and Tenant, p. 1335.

(2) The court's instruction on the measure of damages was to the effect that, if the jury found an eviction and that the respondents had paid no rent for any time beyond the eviction, they could recover only nominal damages for the eviction, but that if the jury found that the respondents had paid rent for any time beyond the eviction, they would be entitled to recover the value of the use of the premises for such period subsequent to the eviction for which they had paid rent. Abstractly this instruction was erroneous. In the absence of pleading and proof of special damages, and there was neither in this case, the true measure of a lessee's damages for total breach of a lease is the difference between the market rental value of the premises for the unexpired term of the lease and the rent reserved for such unexpired term. *Oldfield v. Angeles Brewing & Malting Co.,* 62 Wash. 260,

113 Pac. 630, Ann. Cas. 1912 C. 1050, 35 L. R. A. (N. S.)
426; *Cannon v. Wilbur,* 30 Neb. 777, 47 N. W. 85; *Goldstein
v. Asen,* 91 N. Y. Supp. 783; *Rhodes v. Baird,* 16 Ohio
St. 573; *Favar v. Riverview Park,* 144 Ill. App. 86; *Green
v. Williams,* 45 Ill. 206; *Snodgrass v. Reynolds,* 79 Ala. 452,
58 Am. Rep. 601; *Tyson v. Chestnut,* 118 Ala. 387, 24 South.
73. In this case there is no proof of the market rental value
of the unexpired term. There is proof, however, tending to
show that the tenant had paid rent to May 4, 1913, that is,
for ten days beyond the time of eviction, if there was an evic-
tion. The instruction, though abstractly erroneous, was
therefore not prejudicial.

(3) Touching the affirmative defense and counterclaim,
the court gave the following instruction:

"The defendants also, by way of counterclaim, allege that
one James Root, as agent for the plaintiffs, fired the said
building whereby it was partly burned to their damages in
the sum of five hundred dollars. I instruct you that there
is no evidence to warrant a finding by the jury either that
Root fired the building or that he was by the plaintiffs ap-
pointed as their agent to fire it, and therefore, I instruct you
that you must not award defendants anything on their said
counterclaim."

This instruction is erroneous in two vital particulars. In
the first place, it confines the evidence touching the fire to the
sole office of proving the counterclaim, and inferentially elim-
inates it as a defense. It is clearly relevant as tending to
prove an affirmative defense, even if insufficient to establish
the damages set up as a counterclaim. In the second place,
it takes from the jury a question of fact touching which there
is competent evidence upon which the minds of reasonable
men might well reach different conclusions.

We have set out the salient facts developed by the evidence
touching the character and origin of the fire and the where-
abouts and actions of the respondents at the time of its oc-
currence. We shall not again review the evidence nor com-

ment upon it further than to say that it was sufficient, if credited by the jury, to sustain a finding that the fire was of incendiary origin and was deliberately arranged for by some one who lived in or had access, not only to the house, but to the three inner rooms where the fire originated, which it appears were always kept locked and were securely locked on the night of the conflagration. It clearly appears that the respondents and the man Root were the only persons who had access to these rooms. This is not a criminal action. The quantum of proof required in such cases was not necessary. The appellants were not compelled to produce proof beyond a reasonable doubt that the respondents caused the fire, but only to prove that fact by a fair preponderance of the evidence. The credibility and weight of the evidence was for the jury to determine. In the nature of the case, the appellants were compelled to rely upon circumstantial evidence to prove their affirmative defense and counterclaim. The circumstances here presented were, we think, amply sufficient to take this defense to the jury. They were certainly no less conclusive than those found in *Bruff v. Northwestern Mut. Fire Ass'n*, 59 Wash. 125, 109 Pac. 280, Ann. Cas. 1912 A. 1138, a case in which similar circumstances were held sufficient to take the case to the jury. In that case we said:

"The circumstances shown strongly indicate that the house had been deliberately and purposely prepared for a sudden, destructive, and well-timed conflagration. Respondent held separate insurance policies on the house and its contents, and was the only person in a position to recover for losses resulting from the fire. There was sufficient evidence, if accepted and credited by the jury, to sustain them in finding that the fire was of incendiary origin, and that some one who had access to and was familiar with the premises had deliberately arranged the house and its contents for destruction by fire. The respondent was the only person who lived in, or had constant access to, the house. He was there early in the evening, and left the building securely fastened. There was no evi-

dence of any breaking prior to the arrival of the firemen. They found everything intact and well secured."

The parallel with the case here is too plain to require comment. We are clear that both the affirmative defense and counterclaim should have been submitted to the jury upon proper instructions.

Reversed and remanded for a new trial.

MAIN, MOUNT, CROW, and FULLERTON, JJ., concur.