[No. 17492. Department One. January 17, 1923.]

ABE SCHERMERHORN, *Respondent,* v. GEORGE SAYLES,
*Appellant.*[1]

LANDLORD AND TENANT (15-1)—DAMAGES (118)—LEASE—BREACH
OF COVENANT—MEASURE OF DAMAGES. In an action for breach of the
terms of a lease providing that the landlord should furnish hot
water for a barber shop, the measure of damages is the difference
between the rental value of the property had the lease been com-
plied with and its rental value in the absence of compliance, where
loss of profits cannot be shown with reasonable certainty.

SAME (15-1)—DAMAGES (118)—BREACH OF CONTRACT—LOSS OF
PROFITS—EVIDENCE—SUFFICIENCY. In such an action, loss of profits
is not shown with sufficient certainty by evidence that lack of hot
water caused some inconvenience and that some patrons left on
that account; nor by comparative figures showing weekly income.

Appeal from a judgment of the superior court for
King county, Frater, J., entered April 7, 1922, upon
findings in favor of the plaintiff, in an action on con-
tract, tried to the court. Reversed.

*Guie & Halverstadt* and *Carroll B. Graves,* for ap-
pellant.

*Jno. A. Homer* and *William E. Froude,* for respond-
ent.

BRIDGES, J.—Suit for damages on account of the
alleged breach of the covenants of a lease.

The lease was given by the defendant to the plaintiff
and covered a storeroom in a certain building in
Seattle. It was dated September 20, 1919, and was to
run for four years. This instrument provided that the
lessor should be required to furnish "heat and hot
water at all seasonable times of the year without any
charges to the lessee therefor." It was understood at
the time of the making of the lease that the premises

[1]Reported in 212 Pac. 156.

would be used as a barber shop. In fact, we believe it is expressly so stated in the lease. The plaintiff went into possession sometime in November, 1919, and continued there until the commencement of this suit. In his complaint he claims that the defendant during much of the time failed or refused to furnish heat and such hot water as was necessary to the uses to which the premises were put. He asked for a mandatory injunction requiring the defendant to furnish heat and hot water, and also seeks to recover certain items of damage. The court, trying the case without a jury, refused to grant any equitable relief, but entered a money judgment in favor of the plaintiff in the sum of $1,945.08. This amount, as shown by the judgment, was intended to cover damages up to March 22, 1922. The defendant has appealed.

The trial court seems to have undertaken to determine the damages on the basis of lost profits. The appellant contends that, in a case of this character, the true and only measure of damages is the difference between the rental value of the property had the lease been complied with and its rental value in the absence of any such compliance. The respondent, while admitting that the difference in the rental value is a proper measure of damages, claims that it is not exclusive, and that special damages may be recovered as well as loss of profits, where the same can be shown with reasonable certainty. This court has taken the position that, in cases of this character, the general rule is that the damages must be measured by the difference in the rental value and that they cannot be measured by recovery of the loss of profits, except in special instances and under peculiar circumstances. *Purcell v. Warburton*, 70 Wash. 129, 126 Pac. 89; *Matzger v. Arcade Bldg. & Realty Co.*, 102 Wash. 423, 172 Pac. 47.

It is unnecessary for us here to enter into a discussion of this question. It is certain under all the authorities that, in a case of this character, loss of profits cannot be recovered unless they can be shown with that degree of certainty which the law requires, and in the absence of ability to show the loss of profits, the correct measure of damages is as stated in *Purcell v. Warburton, supra:*

"The difference between the value of the use of the rooms as furnished by the plaintiff and heated as contemplated by the contract, and the value of their use as in fact heated by the defendants."

Loss of profits must always be shown with a reasonable degree of accuracy.

"The testimony must be clear and free from taint of speculation or conjecture." *Matzger v. Arcade Bldg. & Realty Co., supra; Brinnon Logging Co. v. Carlsborg Mill & Timber Co.,* 122 Wash. 483, 210 Pac. 945, and cases cited.

Conceding, merely for the purposes of this case, that the respondent was entitled to recover his lost profits, his testimony falls far short of that degree of accuracy and certainty required by the courts as to what such losses are. Respondent's own testimony shows the wisdom of the rule heretofore laid down by this court that the measure of damage is the difference in the rental value, and shows the utter futility of attempting to prove the loss of profits under circumstances such as exist here. A number of witnesses, particularly barbers working for the respondent, testified to a lack of heat and hot water, and that such interfered with the work in the shop and that some patrons left because thereof. But, in the very nature of things, it was impossible for these witnesses to testify—and they did not undertake to testify—as to the number of

patrons who left the shop because of the conditions and the number who might have done their business there had the proper conditions as to heat and water existed.

The only testimony which even tended to show with any certainty any actual loss of profits was that of the respondent himself. He went into possession in 1919, but he does not make any effort to show the amount of his loss for the major portion of the first year. He bases his comparisons on the period between October 1, 1920, and February 1, 1921, during which period it appears he was permitted to operate the heating apparatus himself and conditions were in fairly satisfactory shape. He testifies that his average weekly income during that period was $211; that from February 1 to July 1, 1921, his average weekly income was $180.80, being a little more than $30 per week less than for the previous period, and that during the twelve weeks from July 1 to September 1 his income was about $120 a week, and that during the period from October 1, 1921, to March 11, 1922, a period of 24 weeks, his average weekly income was $144. He testifies that, from February 1, 1921, to March 11, 1922, there was a total loss of income of $3,452, basing such loss on the income during the period when he ran the furnace himself and had sufficient heat and water.

Basing our calculations on the respondent's figures, we are wholly unable to come to the same total loss that he testifies to. But if we assume his total loss during all of the period in question to be the amount stated by him, to wit, $3,452, the proof does not reach that degree of certainty which the law requires and there are too many inconsistencies and contingencies. He bases all of his loss on a 24-week period commencing October 1, 1920, and ending February 1, 1921. He

takes a period, as a basis for calculation, which ran through the holiday season, which the testimony shows is by all odds the best season of the year. He says that, during the months we have mentioned, he took in $3,452 less than he should have taken in, and that in his business he made a profit of forty per cent of what he took in, consequently his loss was some $1,300. But he makes no effort to show how he arrives at a profit of forty per cent. Testimony is altogether wanting as to the items of expense which he deducted in order to arrive at net profits. We have nothing but his bare statement that he would have made forty per cent profit. Such testimony is wholly insufficient. Besides this, it is shown that for a part of the earlier portion of the lease his brother was engaged in business with him and then sold out and left. A new barber shop was established almost directly across the street from him, and another shop increased its number of chairs and business. All of these things and many more might have affected the respondent's business. Respondent kept no books except to show the total weekly income, and these books are not in evidence and we are not permitted to examine them. The testimony regarding profits is very unsatisfactory. It is largely speculation.

Taking the case all in all, it cannot be said that the respondent has proved his loss of profits with such degree of certainty as that we can let the judgment stand or substitute our own. In fact, when respondent drew his complaint he seemed to be of opinion that he might be unable to prove his loss of profits, because the basis of his action is for a mandatory injunction and he alleges that his damage ''cannot be adequately or definitely determined; that plaintiff has no adequate remedy at law  .  .  .'' But if we should take his

own figures, speculative as they are, they would amount to several hundred dollars less than the trial court gave him, and the judgment would have to be reversed in any event. Being unable to prove his loss of profits with reasonable certainty, the proper measure of damage in this case is the difference in the rental value, as we have already announced. The judgment is reversed and the cause remanded for a new trial.

PARKER, MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.