[No. 31070. Department Two. March 28, 1950.]

DOROTHY FAYE WOODWARD, *as Executrix, Respondent,* v. W. A. BLANCHETT *et al., Appellants.*[1]

[1]Reported in 216 P. (2d) 228.

*Allen Spratlin, William Clapp,* and *Edward T. Engst,* for appellants.

*H. Earl Davis, W. E. Southard,* and *T. B. Southard,* for respondent.

HAMLEY, J.—On May 20, 1941, N. D. Johnson, as owner, and W. A. Blanchett, as tenant, entered into two certain farm leases to run through the crop year of 1942, covering nine hundred sixty acres of wheat land situated in Grant county, Washington. W. A. Blanchett later assigned his interest in the leases to his brother, Harry Blanchett. The leases contained a covenant that the land would be cultivated in a first class farmerlike manner and in proper season. As rent for the premises, the leases provided that Johnson was to receive one fourth of the 1942 crop. The Blanchetts were already in possession on May 20, 1941, having held over under a prior lease.

Beginning early in June, 1941, Johnson, believing the lands to be improperly farmed, hired workmen from time to time to enter the premises and do weeding and disc tilling. It was their testimony, and also that of other witnesses produced by plaintiff at the later trial, that the weeding and cultivating had been neglected by the Blanchetts. As a result, they testified, much of the lands were covered with Russian thistles and other weeds which by July had reached a height of three feet and were as big as table tops. It was their further testimony that, by reason of such neglect, four hundred acres of the leased lands could not be reclaimed from weeds during 1941. Most of this testimony was controverted by the Blanchetts and other witnesses who testified in their behalf.

In the fall of 1941, the Blanchetts seeded fifty acres of the land to wheat. Johnson also seeded a portion of the

land to wheat and rye in the fall of 1941, but the record does not appear to show the acreage which he planted.

On September 3, 1941, Johnson sent W. A. Blanchett a written notice purporting to cancel the lease because of breach of the covenant to cultivate the land in a farmerlike manner. Nine days later Johnson sent a similar notice to W. A. Blanchett and W. J. Blanchett, the lessee's father.

On October 28, 1941, Johnson instituted this action against W. A. Blanchett and Harry Blanchett. The complaint contains three causes of action. The first cause of action, based on an earlier farm lease, and the third cause of action, seeking injunctive relief, were abandoned at the time of the trial. The second cause of action is to recover damages in the sum of twenty-five hundred dollars because of alleged improper methods of farming the lands in question. Defendants answered, denying the allegations of the complaint, and cross-complaining for damages in the amount of three thousand dollars because of alleged interference with defendants' use and possession of the premises. By a later supplemental answer, defendants sought an additional six thousand dollars by reason of the alleged interference.

On January 30, 1942, Johnson sent defendant Harry Blanchett a third written notice of termination and cancellation of the lease, similar in a general way to the two notices sent in September, 1941. In 1942, Johnson harvested the wheat and rye crop he had seeded. The Blanchetts did not harvest the fifty acres of wheat they had seeded, the testimony being that it was not worth harvesting. Johnson died prior to the trial, which was not had until December, 1947, because of W. A. Blanchett's absence while serving in the armed forces. Johnson has been succeeded in this litigation by his executrix.

The jury returned a general verdict for defendants. In answer to an interrogatory, the jury found that plaintiff had suffered damages in the sum of twenty-five hundred dollars because of defendants' failure to farm the land in a proper manner. In answer to another interrogatory, the jury found that defendants had suffered damages in a like

amount because of plaintiff's interference with defendants' use and possession of the lands. The court denied defendants' motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. Thereafter the court entered judgment on the verdict, finding each side to have been damaged in the amount of twenty-five hundred dollars, which amounts were set off, defendants being given judgment for costs and disbursements. Defendants have appealed.

Appellants first assign as error the failure of the court to hold, as a matter of law, that any notice given by Johnson to appellants was improper and insufficient, and that respondent had accordingly failed to prove a cause of action. Appellants' fourth assignment of error involves the same question, and the two assignments will be considered together.

None of the three written notices given to appellants by Johnson informed appellants of the particular acts or omissions asserted to constitute a breach of the covenant to cultivate the lands in a farmerlike manner. None of the notices gave appellants the alternatives of performing the covenant or surrendering the premises. Accordingly, these notices failed to comply with the provisions of Rem. Rev. Stat., § 812 (4) [P.P.C. § 55-5], relating to unlawful detainer. *Byrkett v. Gardner,* 35 Wash. 668, 77 Pac. 1048. It also appears that the three notices were not served in the manner provided by Rem. Rev. Stat., § 814 [P.P.C. § 55-9], also relating to unlawful detainer. Respondent has therefore failed to prove a cause of action on its complaint for damages, if such cause of action is to be regarded as one for unlawful detainer. It accordingly becomes necessary to determine the nature of the cause of action in question.

As heretofore indicated, we are concerned only with respondent's second cause of action, the others having been abandoned at the trial. As to this cause of action, the complaint alleges the execution of the lease; the interest of appellant Harry Blanchett therein; the fact that the leases contain covenants requiring that the lands be cultivated in

a farmerlike manner; appellants' breach of the covenants by failure to plow and weed the lands; and damages resulting therefrom in the sum of twenty-five hundred dollars. Johnson did not seek possession of the premises, since he was already in possession at the time the litigation was instituted. Nor did he seek to cancel the lease or quiet title to the lands. The only relief sought was a money judgment for damages.

The action of unlawful detainer is the legal substitute for the common-law right of personal re-entry for breach. *Spencer v. Commercial Co.,* 30 Wash. 520, 71 Pac. 53; *Brown v. Hayes,* 92 Wash. 300, 159 Pac. 89. Here respondent was not seeking a right of re-entry. Appellants had already left the premises and Johnson was in possession. No writ of restitution was asked for or awarded. See Rem. Rev. Stat., § 819 [P.P.C. § 55-19]. Accordingly, this does not purport to be a statutory action for unlawful detainer pursuant to Rem. Rev. Stat., §§ 812, 814-833 [P.P.C. §§ 55-5, 55-9—55-47], *Johnson v. Chittenden,* 146 Wash. 645, 264 Pac. 425; *Gustin v. Klingenberg,* 190 Wash. 590, 70 P. (2d) 308. See, also, *Petsch v. Willman,* 29 Wn. (2d) 136, 185 P. (2d) 992. It is worth noting that, had this been an action for unlawful detainer, appellants could not have counterclaimed for damages suffered because of wrongful eviction. *Phillips v. Port Townsend Lodge No. 6, F. & A. M.,* 8 Wash. 529, 36 Pac. 476; *Chung v. Louie Fong Co.,* 130 Wash. 154, 226 Pac. 726.

Respondent asserts that this is an action in ejectment pursuant to Rem. Rev. Stat., § 785 [P.P.C. § 24-1]. *Verline v. Hyssop,* 2 Wn. (2d) 141, 97 P. (2d) 653, and *Petsch v. Willman, supra,* are cited by respondent for the proposition that the remedy afforded by the unlawful detainer statute is not exclusive and that a landlord may still maintain an action in ejectment.

We are inclined to believe that this is not a suit for ejectment pursuant to Rem. Rev. Stat., § 785, since the landlord was already in possession and did not seek to quiet title to the lands. 18 Am. Jur. 7, Ejectment, § 2; 28 C. J. S. 848, Ejectment, § 1. In our view this is an ordinary civil action

brought to recover damages for injury to the reversion. 51 C. J. S. 906, Landlord and Tenant, § 262 (b). But, whether an action in ejectment or a simple action for damages, no form of written notice from landlord to tenant was required as a condition precedent to bringing the suit. We conclude that respondent's cause of action does not fail because of any inadequacy in the form of the notice or the manner of its service. Appellants' first and fourth assignments of error are, therefore, not well taken.

Appellants' third assignment of error is somewhat related to assignments one and four, which have just been discussed. Under assignment three it is asserted that the allowance of damages to the lessor because of the lessees' improper farming of the land is inconsistent, as a matter of law, with the allowance of damages to the lessees because of the lessor's interference with the lessees' use and occupancy of the land. Accordingly, it is contended that special interrogatory No. 1, which submitted to the jury the question of respondent's damages and made possible these inconsistent findings, should not have been given. It is further contended that, having given such interrogatory, and the jury having brought in inconsistent answers, it was the duty of the trial court to require the jury to reconcile the inconsistencies, or, in the alternative, to disregard the interrogatories and, on the basis of the general verdict for appellants, enter judgment as prayed for in the cross-complaint.

The question presented by this assignment may be restated as follows: Is a lessor's action for damages because of the lessee's breach of a covenant to operate the premises in a farmerlike manner necessarily inconsistent with, and therefore defeated by, a finding on the lessee's cross-complaint, that there has been an unlawful eviction or a breach of an implied covenant for quiet enjoyment?

In our opinion the two claims are not inconsistent as a matter of law, and the lessor's claim is therefore not necessarily defeated by a finding for the lessees on their cross-complaint. The two duties—the lessor's duty (arising under

either contract or tort) not to disturb the lessees in their use and enjoyment of the lands, and the lessees' duty (arising under contract) to operate the premises in a farmerlike manner—are not so related that the breach of the first will invariably excuse a breach of the second.

It is true that, under the facts of a particular case, the two claims may prove to be inconsistent. This would be the case if it were established that the lessor's breach of duty made it difficult or impossible for the lessees to fulfill the covenant relating to farmerlike operation. But here there was evidence from which the jury could have concluded that the lessees' breach not only preceded the lessor's re-entry and interference, but was the actual reason why the lessor acted as he did to repossess the premises. If this was true, and the jury apparently so found, then the lessees' breach was in no way caused or enlarged by the lessor's interference. It follows that the latter's interference does not release the lessees from any liability for damages arising as a result of their own breach.

 Appellants further contend, under this assignment, that interrogatory No. 1 was faulty because it assumes that appellants failed to farm the land properly. This interrogatory reads as follows:

"What were the damages, if any, suffered by the plaintiff to the leased premises, for the defendants' failure to farm the land properly as alleged by plaintiff?"

Appellants' exception to this interrogatory reads as follows:

"We take exception to that on the same basis [that plaintiff had not served proper notices as required by the unlawful detainer statute], namely, no consideration under the law. The Plaintiff under no consideration is entitled to a judgment in this action, not having availed himself of the procedure which the law has provided."

This exception is directed solely to the question of whether the inadequacy of notice defeats respondent's claim. It furnishes no basis whatever for discussing the contention that the interrogatory assumes that appellants failed to farm the

land properly. Where the exception to an instruction is of limited scope, the range of argument before this court is similarly limited. *Boyle v. Lewis,* 30 Wn. (2d) 665, 193 P. (2d) 332. Because of the inadequacy of the exception, we do not pass on this particular point relative to interrogatory No. 1.

Appellants assert, as their second assignment of error, that the trial court erred in rejecting the offers of proof made by appellants relative to the value of crops taken from the leased premises during the unexpired term following Johnson's re-entry on the premises.

The record shows that the following evidence was received relative to the damages sustained by appellants: That the average annual yield of wheat per acre on this land prior to 1938 (latest date prior to leasehold term for which information was available) was fifteen to twenty bushels; that Johnson seeded an unstated portion of the lands to wheat and fifty acres to rye in the fall of 1941, and all of such acreage was harvested in 1942 for Johnson, who retained the yield; that the yield on the acreage seeded by Johnson compared favorably with the yield on other and similar lands in the area; that the Blanchetts seeded fifty acres of the land to wheat in the fall of 1941, but that the crop on this acreage was not worth harvesting in 1942, and was not harvested; that the fair market value of the leasehold at the time of the eviction in 1941 was between nothing (respondent's witnesses) and sixteen dollars an acre (appellants' witnesses); and that, if the lands had been cared for in a farmerlike manner, the fair market value of the leasehold at the time of the eviction in 1941 would have been from $3.50 to fifteen dollars an acre (respondent's witnesses).

Appellants offered to prove, in addition, the exact 1942 yield in bushels on the leasehold lands which had been seeded, cultivated and harvested by Johnson, the market value of such crop, and the cost of seeding, harvesting, hauling and handling such harvest. The court rejected this offer of proof except as to any portion of the lands which had

been seeded by appellants. It is this ruling of the trial court which is the subject of the second assignment of error.

Appellants were seeking damages in the sum of three thousand dollars on their original cross-complaint, and in the additional sum of six thousand dollars on their second cross-complaint. This second cross-complaint states a cause of action for damages by reason of the conversion of the lessees' crop by the lessor. It is recited that the crop was seeded and being raised by appellants, that Johnson took possession of that crop, and that it was harvested and marketed for his benefit.

No evidence was received or tendered in proof of the alleged conversion. The undisputed testimony produced at the trial was that Johnson seeded all but fifty acres of the premises, and cultivated, harvested and sold this crop for his own benefit. Appellants seeded fifty acres, but did not harvest this crop, nor did anyone else, the testimony being that this fifty acres was not worth harvesting. There being no proof received or offered tending to establish the cause of action for conversion of crops, as set out in the second cross-complaint, the point was never reached where evidence as to appellants' damages under this cause of action was admissible. Therefore, with respect to the second cross-complaint, the trial court properly rejected the tendered evidence as to the net value of crops produced on the premises following Johnson's re-entry.

This leaves for consideration the question of whether the rejected evidence should have been received in proof of appellants' damages claimed under the original cross-complaint. The substance of this cross-complaint is set out in part of paragraph X and all of paragraph XI·of the "separate affirmative defense" which was a part of appellants' answer verified in December, 1941. It is alleged in paragraph X, with respect to the claim for damages, that although all prior differences between the parties had been adjusted and settled on May 20, 1941, when the leases now in issue were executed, Johnson entered upon the land which was being occupied by appellants and commenced to fall seed a part

of the land counter to the wishes of appellants, and that in so doing, Johnson "performed a poor job" and failed to get the ground in proper condition, as a result of which appellants would have to reseed in the spring of 1942. Paragraph XI alleges as follows:

"That the said acts of the plaintiff interfering with the defendants and prohibiting them from taking care of the property, and his going upon the land and improperly seeding it to fall wheat when it should have been seeded to spring wheat has damaged the defendants in the sum of Three Thousand Dollars."

The prayer of the answer asked, among other things, that appellants recover damages in the sum of three thousand dollars. The jury awarded appellants twenty-five hundred dollars of this claimed damage, so that the amount of damages remaining in issue on this cross-complaint is five hundred dollars.

It was apparently appellants' theory, when they verified and served this answer in December, 1941, that Johnson had interfered with appellants' use of the premises but that there had not been, at that time, a total eviction. Thus it was alleged that, by reason of Johnson's interference in the fall of 1941, appellants would have to reseed in the spring of 1942. The evidence introduced at the trial shows, however, that appellants did not reseed in the spring of 1942 nor continue in possession of the premises for any purpose, and that Johnson harvested and retained the crop he had seeded. Deeming this cross-complaint amended to conform to the proof, it may be considered as stating a cause of action for wrongful eviction or for breach of an implied covenant for quiet enjoyment.

The applicable measure of damages where the lessor has wrongfully evicted the lessee is stated as follows in *King v. King*, 83 Wash. 615, 620, 145 Pac. 971:

"In the absence of pleading and proof of special damages, and there was neither in this case, the true measure of a lessee's damages for total breach of a lease is the difference between the market rental value of the premises for the unexpired term of the lease and the rent reserved for such unexpired term. [Citing cases.]"

A similar measure of damages applies where there has been a breach of a covenant for quiet enjoyment. *Matzger v. Arcade Bldg. & Realty Co.,* 102 Wash. 423, 173 Pac. 47.

■ We do not believe that the proffered evidence was admissible in determining appellants' general damages—the difference between the market value of the premises for the unexpired term of the lease and the rent reserved for such unexpired term. In our opinion, the fair market value of the unexpired term of a lease is to be determined with reference to the information available at the beginning of the unexpired term. What results were thereafter achieved in operating the premises were dependent upon the vagaries of seed quality, climate, farming methods, labor costs, crop prices and many other factors. None of these variables were known as of the time when the market value of the unexpired term must be determined—that is, at the beginning of that unexpired term, when the interference or eviction occurred. Accordingly, they could have had no effect upon the market price as of that time.

Our view on this finds support in *Glaubitz v. Meyer,* 149 Minn. 161, 165, 182 N. W. 1002. There, the court disapproved an instruction which would have permitted the tenant under a farm lease to show that there had been an appreciable increase in the rental value of the premises following the breach. The court said:

"We think the increase must be limited to the time the breach occurred, and is not to be estimated at what thereafter it might advance to."

■ The sole inquiry in the instant case was as to the present rental value of the premises as of the date of the eviction. The term "present rental value" is used interchangeably with the term "fair market value." See *Oldfield v. Angeles Brewing & Malting Co.,* 62 Wash. 260, 113 Pac. 630, Ann. Cas. 1912C, 1050, 35 L. R. A. (N.S.) 426, 72 Wash. 168, 129 Pac. 1098, 77 Wash. 158, 137 Pac. 469; *King v. King,* 83 Wash. 615, 145 Pac. 971; *Matzger v. Arcade Bldg. & Realty Co.,* 102 Wash. 423, 173 Pac. 47; *Schermerhorn v.*

*Sayles,* 123 Wash. 139, 212 Pac. 156; 52 C. J. S. 197, Landlord and Tenant, § 461 (b).

Evidence was permitted and received from several witnesses as to present rental value of the leasehold at the time of the eviction. Such value was expressed in terms of dollars per acre. In addition, evidence was received as to the average annual yield of wheat per acre on this land prior to the leasehold term, and as to the actual condition of the land at the beginning of the unexpired term. The fair market value of the leasehold as of that time was therefore adequately established, and, in fact, led the jury to award to appellants five sixths of the damages they claimed under this cross-complaint.

It may be that evidence as to the market value of crops actually produced during the unexpired term would be relevant in establishing damages where the lessee's share of crops actually being grown by him had been destroyed or harvested by the lessor. See *Chung v. Louie Fong Co.,* 130 Wash. 154, 226 Pac. 726; 52 C. J. S. 751, Landlord and Tenant, § 815. But here, conversion of the lessees' crop was not pleaded in this first cross-complaint, nor was any proof as to conversion received or offered under either cross-complaint.

It is also possible that, in an appropriate case, evidence as to the market value of crops actually produced during the unexpired term would have a bearing upon the determination of lost profits. See *Shoemaker v. Crawford,* 82 Mo. App. 487; *Carlson v. Bain,* 116 Colo. 526, 182 P. (2d) 909. In *Pappas v. Zerwoodis,* 21 Wn. (2d) 725, 733, 153 P. (2d) 170, we stated the general rule with respect to the recovery of special damages, including lost profits, as follows:

"Where special damages, such as loss of profits, are specifically set forth and proved, the recovery by a tenant, for breach of his landlord's covenant to repair or other covenant with respect to the use of property, is not restricted to the difference in rental value, as expressed in the foregoing general rule, but may also include such loss of profits as has been directly and necessarily caused by the landlord's wrongful act or default. In such case, however,

the loss must be shown with a reasonable degree of certainty and accuracy, and the proof establishing the loss must be clear and convincing, free from speculation or conjecture."

 It will be observed from the foregoing rule that a claim for lost profits must be specifically set forth in the pleadings. See, also, *King v. King, supra*. This is in conformity with the general rule that special damages must be specified with particularity in the plaintiff's pleading. 15 Am. Jur. 747, Damages, §§ 305, 306. Here it is very doubtful if the original cross-complaint, as amended to conform to the proof received without objection, sets forth a basis for any claim other than for general damages.

 In any event, under the circumstances of this case, we believe that the trial court properly rejected the evidence, if offered to establish lost profits, because of the speculative and conjectural nature of the proposed testimony. Here convincing evidence had been received, tending to show that the lessees were not giving proper attention to this farm. The lessor then re-entered and by dint of hard work reclaimed the fields from the weeds and seeded, cultivated and harvested a good crop. Under these circumstances, it seems to us that what the lessor actually did with the land after his re-entry cannot be said to fairly indicate what the lessees would have done with it—the profit they would have made on it—had they remained in possession. This case calls for application of the rule that a loss of profits is not allowed unless it can be measured with a fair degree of accuracy, and that the testimony must be clear and free from taint of speculation or conjecture. *King v. King, supra*; *Matzger v. Arcade Bldg. & Realty Co., supra; Schermerhorn v. Sayles, supra; Pappas v. Zerwoodis, supra.*

We conclude that, with respect to the first cross-complaint as in the case of the second cross-complaint, the proffered evidence as to the actual crops grown and harvested in 1942 was properly rejected. Appellants' second assignment of error is therefore not well taken.

Appellants' last two assignments of error, relating to the denial of their motion for judgment notwithstanding the verdict or for a new trial, and the entry of judgment in conformance with the verdict, are, in effect, disposed of contrary to the claims of appellants by what has already been said in discussing the preceding assignments.

The judgment is affirmed.

ROBINSON, MALLERY, and HILL, JJ., concur.

SIMPSON, C. J., dissents.

