THE PEOPLE OF THE STATE OF NEW YORK ex rel. BADISCHE ANILIN AND SODA FABRIK, Appellant, v. JAMES A. ROBERTS, Comptroller of the State of New York, Respondent.

TAX — FOREIGN CORPORATION AS A SPECIAL PARTNER — L. 1880, CH. 542. A foreign corporation is deemed to be engaged in business in this state, within the meaning of chapter 542 of the Laws of 1880, and the acts amendatory thereof, when it becomes a special partner in a limited partnership within the state, which is the sole agent for the sale of its products in this country, and is liable to taxation upon the amount of capital which it contributed to the partnership, as capital stock employed in this state.

*People ex rel. Badische Fabrik* v. *Roberts*, 11 App. Div. 310, affirmed.

(Argued February 1, 1897; decided March 2, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 23, 1896, which confirmed on certiorari the proceedings of the state comptroller in assessing a tax upon the relator.

The comptroller of the state imposed a tax upon the relator for the sixteen years ending November 1st, 1896, under the provisions of chapter 542 of the Laws of 1880, and the acts

amendatory thereof.    The relator is a foreign corporation, organized under the laws of the Grand Duchy of Baden, in the Empire of Germany.    It is engaged in the manufacture and sale of chemicals at Ludwigshafen, in the Kingdom of Bavaria; where its books and records are kept and where all the meetings of its directors have been held.    In 1879 the relator became a special partner in the limited partnership of William Pickhardt & Kuttroff, in the city of New York, and contributed to the capital of the partnership the sum of $150,000.    The business carried on by Pickhardt and Kuttroff is the importation of chemicals and that firm is the sole agent in this country for the sale of the relator's products; which have amounted, on the average, to about $2,000,000 a year.    The products are shipped either directly to Pickhardt and Kuttroff in the city of New York, or to any part of the United States, as may be directed.    The firm of Pickhardt and Kuttroff pays the relator for products shipped, by remittances from New York.    It does not appear that any of the stockholders of the relator have ever resided in this country, or that it ever had any corporate office or agency for carrying on its business here; unless it can be deemed to have maintained such an office through its connection with the firm of Pickhardt and Kuttroff.

The comptroller imposed a tax upon the relator's business, measured by the sum of $150,000 as the amount of capital stock employed within this state.    It is the claim of the relator that it was not actually engaged in business within this state, within the meaning and purview of the acts, under which the comptroller claims the right to impose the tax.

*Michael H. Cardozo* for appellant.    A foreign corporation cannot be held to be doing business in the state of New York, within the meaning of chapter 542 of the Laws of 1880, by virtue solely of the fact that, as a special and not as a general partner, it is interested in a limited partnership, transacting business in this state.    (*People ex rel.* v. *Wemple,* 150 N. Y. 46; *People ex rel.* v. *Campbell,* 138 N. Y. 543; *People ex rel.*

1897.]    People ex rel. Badische Fabrik *v.* Roberts.    61

N. Y. Rep.]                Points of counsel.

v. *Wemple*, 138 N. Y. 1; *People* v. *E. T. Co.*, 96 N. Y. 388; *People* v. *H. Ins. Co.*, 92 N. Y. 328, 345; 134 U. S. 594; *People* v. *H. S. M. Co.*, 105 N. Y. 76; 143 U. S. 305; *People ex rel.* v. *Wemple*, 129 N. Y. 558; *S. C. O. Co.* v. *Wemple*, 44 Fed. Rep. 24, 26; *S., etc., C. Co.* v. *Attorney-General*, 46 N. J. Eq. 270; *Richardson* v. *Hughitt*, 76 N. Y. 55; *Eager* v. *Crawford*, 76 N. Y. 79.) There is nothing in the Limited Partnership Act which denies to a corporation the right to take advantage of the provisions of that statute. (*People ex rel.* v. *Comrs. of Taxes*, 23 N. Y. 242, 243; *La Farge* v. *E. F. Ins. Co.*, 22 N. Y. 352; *S. C. Co.* v. *S. P. R. R. Co.*, 118 U. S. 394; *People* v. *Trinity Church*, 22 N. Y. 44; *Olcott* v. *T. R. R. Co.*, 20 N. Y. 210; *People ex rel.* v. *McLean*, 80 N. Y. 259; *Thornton* v. *Bank*, 3 Pet. 36; *Holmes* v. *Willard*, 125 N. Y. 75; *U. S. V. Co.* v. *Schlegel*, 143 N. Y. 537, 542; *Demarest* v. *Flack*, 128 N. Y. 205.)

*Theodore E. Hancock* for respondent. The alleged special or limited copartnership arrangement between the appellant and Pickhardt & Kuttroff never had any legal force or validity. The corporation has simply been doing business in this state through these private individuals as its agents. (*People* v. *N. R. S. R. Co.*, 121 N. Y. 623; *N. Y. & S. C. Co.* v. *F. Bank*, 7 Wend. 412; *Catskill Bank* v. *Gray*, 14 Barb. 479; Morawetz on Corp. [2d ed.] § 421; Beach on Priv. Corp. § 843; *Whittenton Mills* v. *Upton*, 10 Gray, 582; *Bank of Augusta* v. *Earle*, 13 Pet. [U. S.] 519, 589; *People* v. *Fire Assn. of P.*, 92 N. Y. 311; *P. F. Assn.* v. *N. Y.*, 119 U. S. 110; *People ex rel.* v. *Roberts*, 91 Hun, 158; 149 N. Y. 608; *People ex rel.* v. *Campbell*, 144 N. Y. 166; *B. G. L. Co.* v. *Claffy*, 151 N. Y. 24.) Assuming that this corporation is a special partner, it must be held to be doing business in this state. (2 R. S. [9th ed.] 1843, §§ 1, 17; *White* v. *Hackett*, 20 N. Y. 178; *C. N. Bank* v. *Strauss*, 137 N. Y. 148; *Van Voorhis* v. *Webster*, 85 Hun, 591; *Mills* v. *Argall*, 6 Paige, 577; *People ex rel.* v. *Wemple*, 131 N. Y. 64.) No question was made that the settlement of the tax was exces-

sive in amount.    The settled rule is that the determination of
the comptroller must stand upon the question of valuation,
unless it is clearly shown to have been erroneous.    (*People ex
rel.* v. *Wemple*, 138 N. Y. 587; *People ex rel.* v. *Wemple*, 129
N. Y. 558; *People ex rel.* v. *Wemple*, 131 N. Y. 64; *People
ex rel.* v. *Wemple*, 133 N. Y. 328; *People ex rel.* v. *Campbell*,
145 N. Y. 587.)

GRAY, J.    The decision of the question presented to us for
our review is not without difficulty, and depends somewhat
upon the intent of legislation, as explained by our decisions,
and the policy which the state must be regarded as pursuing.
Whether the relator is authorized by the law of its creation to
become a special partner in a limited partnership, we are not
informed by the record and it is not necessary that we should
consider the question whether in so doing it has exceeded its
corporate powers, or has violated the policy of our state with
reference to the exercise of powers apparently beyond what
are granted to, or should be implied in, a corporation.    It is,
also, clear that the relator cannot be charged with any attempt
at an evasion of our laws; inasmuch as the formation of its
limited partnership antedated the law of 1880.

The law, under which the comptroller of the state exercises
the authority to tax corporations for the benefit of the state,
had its origin in chapter 542 of the Laws of 1880 and has been
added to, or modified, through amendatory acts since then.    It
imposes a tax upon every corporation organized pursuant to
law in this state, "or in any other state or country, and doing
business in this state."    That tax is to be paid upon its fran-
chise or business, and the basis for the tax is "the amount of
capital stock employed within this state."    The tax is not
upon property; but, in the case of domestic corporations, it is
imposed upon their corporate franchise; while, with respect
to foreign corporations, it is upon the business that they do in
this state.    If the latter come into this state, for the purpose
of doing some part of their corporate business here, they are
placed under the obligation to bear some portion of the gen-

eral burden of taxation and, to effectuate that purpose, the legislature has declared that the business done shall bear the burden of a tax, to the extent that it is ascertained that the capital is employed here. (*People ex rel. American C. & D. Co.* v. *Wemple,* 129 N. Y. 558; *People ex rel. S. C. O. Co.* v. *Wemple,* 131 N. Y. 64; *People ex rel. P. R. R. Co.* v. *Wemple,* 138 N. Y. 1; *People ex rel. Singer Mfg. Co.* v. *Wemple,* 150 N. Y. 46.) The intention of the legislature is that, when foreign corporations employ their capital in carrying on a business within this state, they must pay a tax to the state in return for the privileges and benefits they enjoy. Indeed, no good reason can be urged why they should not, according to the business done, be subjected to the same burdens and obligations as are domestic corporations. The policy of the state is not to prevent the employment here of foreign capital, nor to place any unreasonable restrictions upon such employment. To the contrary, by a wise and enlightened policy, the greatest facilities are offered for the conduct of commercial enterprises of every nature and they are extended to all who choose to come within our borders, without any unreasonable discrimination between the resident and the foreigner. If it requires of the foreign corporation that it shall contribute to the revenues of the state a tax, measured by the amount of capital employed in doing business here, it is but the requirement in one form of what it exacts from the home corporation in another form. It is needless to discuss the question more elaborately, in view of the discussion it has received in this court, in many decisions.

The contention on the part of the appellant is, that a foreign corporation cannot be deemed to be doing business in this state by virtue, solely, of the fact that it is interested as a special partner in a limited partnership here, and that contention has received the support of two of the learned justices of the Appellate Division, who were unable to agree with their associates in affirming the action of the comptroller. The argument may fairly be summarized in this way: That, as the tax is upon the right to do business within the state, it must appear that the corporation is actually, as such, engaged in the

transaction of its business here, and that the condition of the law is not met, when it is made to appear that there has been only an investment of capital within this state, in a business which other parties, alone, control and manage. While it is very true that a corporate business must be found to be transacted here, in order that a tax may be imposed; still I think we may look through the form and regard the substance of the transaction in question. If agencies are adopted, not independent, but of which, in fact, the foreign corporation is a member and through which its business is done, can we, and should we, say that in that way it has placed itself beyond the reach of the taxing officer? In a broad sense, all persons may be said to be doing business where their capital is placed and that they have stipulated for a contractual relation, whereby their powers of control and administration are restricted, may affect, but does not change, the fact. The idea in the formation of a limited partnership is the transaction of a business by the parties who enter it, under certain conditions; the performance of which will exempt the special partner from liability for the debts of the partnership beyond the fund contributed by him to the capital. It would be difficult to say that a special partner was not engaged in the transaction of business, as an inference from the statutory provisions which create the limited liability. In this case, the corporation has placed $150,000 with a firm in New York city, of which it assumed to become a member. The business of that firm was the importation of chemicals and all the sales of the relator's manufactured products within this state are made by, or through, this firm. It must be assumed that the relator's contribution of capital is an efficient cause in this profitable marketing of its products here; and while, as a special partner, it may be under limitations and restrictions with respect to partnership powers, yet, (and we are assuming for the purpose of the discussion that the relator may validly enter into the partnership), the relator is present here as a member of the partnership; or is deemed in the eye of the law to be here for certain purposes. In that guise, it is employing some portion of its capital and the ques-

tion, in reality, becomes one of the nature of the agency availed of by the relator for the purpose of carrying on its business of marketing its manufactured products within this state. It has, in effect, by this method of a limited partnership, established a place within this state for the doing of a part of its business and though I come to the conclusion with some hesitation, I think that it may be regarded as coming within the operation of the statute.

The order appealed from should be affirmed, with costs.

O'BRIEN, J. (dissenting). It must be and is conceded that the relator is not subject to taxation under the act of 1880, unless it is actually engaged in some business in this state.

The record shows that this fundamental fact did not exist, and consequently that there was no legal basis for the assessment. There is no dispute in regard to the facts and no room for opposing inferences.

The relator is a manufacturing and business corporation, created under the laws of the Grand Duchy of Baden in the German Empire, with its principal office at a village on the Rhine in the Kingdom of Bavaria. The business in which it is engaged is the manufacture and sale of chemicals. In the year 1879, before the statute under which the tax has been imposed was passed, the relator invested $150,000 in the business of the firm of William Pickhardt & Kuttroff, 98 Liberty street, in the city of New York, and it has remained in that business, so invested, ever since. The money was paid in under an agreement whereby that firm and the relator formed, or attempted to form, a special partnership, and the relator has maintained that relation to the firm ever since. It has received large profits from the investment. The business of the firm is the sale of chemicals, and it sells in each year a large quantity of the goods manufactured by the relator in Germany, but the business is solely conducted by the legal entity which is represented by the firm, whoever the members may be. The goods so sold are delivered to the firm in Germany upon an actual sale and paid for by the purchaser,

and when shipped the title passes to the firm. The corporation has no title to or interest in any goods or other property in this state. It has no corporate agent here, and the only interest it has in this country is represented by the investment. In 1895 the comptroller imposed a tax on the relator for the past sixteen years upon the theory that it was doing business in this state during that time, and had $150,000 of its capital employed in such business. There can be no doubt that the relator and the New York firm intended to form a special partnership, and supposed they had, and that they acted and dealt with each other upon the basis of that relation. There certainly was a partnership in so far as the parties could create such a relation between themselves, and in my opinion they would be bound to third parties in that relation.

But it is contended that a corporation cannot become either a general or special partner in a business firm under the laws of this state. I do not assent to that proposition as applied to this case. The relator could, under general principles of law based upon comity, do any lawful business here that it might do under the law of its creation. It could become a partner here in a business firm, if that power was conferred upon it by the law of the place where it was organized and is domiciled, unless prohibited by some positive law or rule of public policy in force here. I am not aware of any such prohibition, and, since there was no proof before the comptroller that it had acted beyond its chartered powers, there is no basis for the contention that it was not a partner in the firm.

The right of a foreign company to do anything here that it might lawfully do at home was recognized, and in fact decided, in *Vanderpoel* v. *Gorman* (140 N. Y. 563), where we held that a New Jersey corporation could make a general assignment for the benefit of creditors here, since it had the power to do so by the law of the state under which it existed, and this, although our domestic corporations were forbidden by statute to do the same thing.

But if it be granted that the relator and the firm did not succeed in carrying out their intentions to create a partner-

ship, for the reason that such an arrangement and such relations were impossible under our laws, that cannot aid the state in maintaining this tax, but, on the contrary, it makes the case still stronger for the relator. Then the case must rest entirely upon the fact that the New York firm has $150,000 of the relator's money without the existence of any partnership relations, the law not permitting them to be formed or to exist. Under these circumstances, what business is the relator doing in this state? It is not engaged in selling goods, since it has no goods to sell, and never had. The firm buys and pays for the goods, and owns them from the time they are purchased and delivered in Europe, and it is the firm that sells them. It does not help the case any to eliminate the relator from the firm by showing it was impossible that it could be a member. That argument only proves that the firm buys, owns and sells the goods without any partnership relations whatever with the corporation. The firm, as a legal entity transacting the New York business, is not destroyed by excluding this corporation from membership. It only makes still plainer the proposition that it is the firm in New York that owns and sells the goods, and conducts all the business that is carried on here, and not the relator in any sense.

We have held that a foreign corporation cannot be deemed to be engaged in business in this state, within the meaning of the act of 1880, from the fact that it holds stock in corporations in this state which are transacting business here, and this although the foreign corporation furnished a large part of the capital of these companies, procured them to be organized and they were manifestly instruments of the foreign corporation for the extension and profitable conduct of its business. (*People* v. *American Bell Telephone Co.*, 117 N. Y. 241.) It was said in that case that for one person to supply the means to another to do business is not the doing of that business by the former. I am unable to see why that principle does not govern this case. The relator has supplied the New York firm with the sum of $150,000 upon which to do business here. Concededly that is all there is of the trans-

action. It expected, no doubt, and has received large returns upon the advances, but no larger, if as large, as the Bell Telephone Company received from the corporations here which it had really created, in the form of rents and royalties for the use of its inventions.

But the relator's receipts by way of interest or profits upon the money advanced, whether more or less, have no bearing on the question whether it is doing business in this state. any more than the receipts of the Bell Telephone Company had in the case referred to. Indeed, the latter case was a much stronger one to sustain the tax than the one at bar, since it appeared that it had organized numerous telephone companies in this state, took the stock to a large extent and then leased to the local companies its appliances for the transmission of intelligence by electricity, at an agreed rent, by contracts executed in Boston, where the rents or royalties were made payable. It was shown that the Bell Company was in receipt of a very large income from these operations, and yet the court held that it was not doing business in this state within the meaning of the statute.

How will the relator ever be able to reclaim the money that it has paid into the firm in case of refusal to pay? If there is no partnership of course no bill can be filed for dissolution, accounting or distribution. The only remedy of the corporation would be an action for money had and received, and this reveals the true nature of the transaction and the relations which the corporation holds toward the New York business. It stands in the relation of a creditor. The money paid in is in the nature of a loan whether the interest be more or less. The firm is its debtor, but the corporation is not doing business in this state in any proper sense.

Moreover, all the property that the New York firm has, whoever the members of that firm may be, is taxable under general laws, and even if the relator had any interest in it would be taxable under chapter 37 of the Laws of 1855. We do not know whether it has been so taxed or not, but it is enough to know that it is liable to such taxation, and we

cannot sustain the present tax without approving the principle of double taxation.

The order of the General Term and determination of the comptroller should be reversed.

All concur with GRAY, J., for affirmance, except O'BRIEN, J., who reads for reversal.

Order affirmed.