501 DeMERS, INC., Plaintiff and Respondent,

v.

Victor L. FINK and William W. Fink, doing business as V & W Parking Stations, Defendants and Appellants.

Civ. No. 8386.

Supreme Court of North Dakota.

Feb. 16, 1967.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for plaintiff and respondent.

Letnes, Murray & Marshall, Grand Forks, for defendants and appellants.

PAULSON, Judge.

This is an action brought by the plaintiff against the defendants for the recovery of rentals for a parking lot in the city of Grand Forks, North Dakota. The parking lot was leased by the plaintiff corporation to the defendants. A written lease was entered into between the parties to this action and the term of such lease commenced January 1, 1963. The defendants entered into possession of said premises on December 5, 1962, and operated the parking lot until September 24, 1963, when a notice of cancellation was served upon them and possession was relinquished to the plaintiff. The defendants, that is, Victor L. Fink and William W. Fink, were doing business as V & W Parking Stations in the city of Grand Forks and were not residents of the State of North Dakota and, accordingly, personal service of the summons and complaint could not be made upon them in this State. The parking lot known as the V & W Parking Stations was no longer being operated by the defendants at the time suit was commenced against them. However, the defendants did, with another partner, operate a parking lot or lots in Minot, North Dakota, and also one in Fargo, North Dakota. The service of the summons and complaint was made upon the defendants in the State of North Dakota by service on their manager, one Roger LaFontaine, who was the person in charge of the parking lot in which the defendants were part owners at the time of the service of the summons and complaint. This service was made by the sheriff of Ward County, North Dakota; that thereafter substituted service was made upon the

defendant, William W. Fink, in the city of St. Paul, Minnesota, by the sheriff of Ramsey County, Minnesota, and service upon the defendant, Victor L. Fink, was made by registered mail by mailing a copy of the summons and complaint to the said Victor L. Fink at his residence in the city of Minneapolis, Minnesota. An affidavit of compliance was executed by one of the attorneys for the plaintiff, pursuant to the North Dakota Rules of Civil Procedure.

The defendants thereupon moved to dismiss the complaint of the plaintiff upon the ground that the complaint failed to state a cause of action and on the further ground that the action should be dismissed or the service quashed by virtue of the fact that the defendants were residents of the State of Minnesota and not residents of the State of North Dakota, and were not properly served under the North Dakota Rules of Civil Procedure, and that the court therefore lacked jurisdiction *in personam*. The defendants also interposed an answer and a counterclaim to the complaint of the plaintiff in which the defendants claimed certain damages for noncompliance by the plaintiff with the terms and provisions of the written lease. The defendants, through their attorneys, later filed an affidavit of prejudice against the trial judge, which affidavit was not honored. The judge denied the motion to dismiss said action for lack of jurisdiction.

The case came on for trial before the Honorable Harold Hager, one of the judges of the First Judicial District.

The defendants, at the commencement of the trial, further objected to the jurisdiction of the court and also objected to the failure of the court to honor the affidavit of prejudice. After the trial by the court, the judge ordered that a judgment be entered in favor of the plaintiff and against the defendants in the sum of $4,995.68, and, in addition, dismissed the counterclaim of the defendants. The defendants thereupon moved the court to amend and supplement the findings of fact,

conclusions of law, and order for judgment, or for a new trial. The court denied said motion and the defendants have appealed from the order denying a new trial and demanded a trial de novo.

The first issue is whether there was proper service of the summons and complaint upon the defendants, pursuant to Rule 4(e) (3), North Dakota Rules of Civil Procedure. The pertinent sections of said rule read as follows:

"When any natural person or persons not residing in this state shall engage in business in this state, *in any action against such person or persons arising out of such business, by delivering a copy of the summons to the person who* at the time of service *is in charge of any business* in which the defendant or defendants are engaged within this state, if there is such, and such service shall be of the same force and effect as if served personally within the state upon the said defendant or defendants so engaging in business in this state provided that a copy of such summons together with a notice of such service upon such persons in charge of such business pursuant to the provisions of this paragraph shall be sent forthwith to such nonresident person or persons by registered or certified return receipt requested mail. * * *" (Emphasis added.)

The plaintiff served the summons and complaint upon Roger LaFontaine, the manager of the parking lot in the city of Minot, North Dakota, who was at the time of service the person in charge of the parking lot in the city of Minot, and the defendants concede that on the date of service of said summons and complaint on Roger LaFontaine, they were engaged in business in Minot, North Dakota, in the parking lot business, but under the name of V & W Associates; and the defendants further contend that they were not at the time of the said service of said summons and complaint engaged in the business out of which this action arose, namely, V & W Parking

Stations at Grand Forks, North Dakota. A careful consideration of Rule 4(e) (3), North Dakota Rules of Civil Procedure, shows that the significant words of the foregoing rule are the following:

"* * * *by delivering a copy of the summons to the person who at the time of service is in charge of any business in which the defendant or defendants are engaged within this state, * * *" (Emphasis added.)

The defendants have admitted that they were partners in the business and doing business as V & W Parking Stations and, in addition, have admitted that they were engaged at all times mentioned in a similar business at Minot, North Dakota, which was known as V & W Associates, but which partnership included not only these two defendants, but an additional partner as well. Likewise, in the answers to certain interrogatories which were served upon the defendants and answered by them, the defendants did affirm and admit that they had done business as V & W Parking Stations at Grand Forks, North Dakota, and, in addition thereto, were operating a parking lot business in the city of Minot, North Dakota, as V & W Associates; that said defendants further answered to Interrogatory No. 12 that they had an employee by the name of Roger LaFontaine and that he was an employee of V & W Associates, and, further, that he was the general manager for V & W Associates. There is no question that the defendants were operating a business in the State of North Dakota at the time of the service of the summons and complaint.

The defendants further contend that in order for the court to acquire jurisdiction over them under Rule 4(e) (3), North Dakota Rules of Civil Procedure, the action must arise out of the operation of such business and, further, that the defendants were not, on June 15, 1964, engaged in the business out of which this action arose. Rule 4(e) (3) states that the service may be made—

"* * * by delivering a copy of the summons to the person who at the time of service is in charge of any business in which the defendant or defendants are engaged within this state, if there is such, and such service shall be of the same force and effect as if served personally within the state upon the said defendant or defendants so engaging in business in this state * * *" (Emphasis added.)

The record shows that the defendants were engaged in business in North Dakota and they further admitted that Roger LaFontaine was in charge of a similar business in the city of Minot, North Dakota, and that the action further arose out of the transaction of business of the defendants in the State of North Dakota. The defendants further concede that there was not a partnership agreement in existence in the State of North Dakota and that a certificate of copartnership has never been filed in North Dakota. The defendants further contend that the business at Minot was a separate and distinct partnership, but this is not significant, particularly in the State of North Dakota, which is one of the States that has adopted the Uniform Partnership Act. Section 45–05–05, N.D.C.C., defines a partnership as follows:

"1. A partnership is an association of two or more persons to carry on as co-owners a business for profit. * * *"

Accordingly, a partnership is not a separate legal entity but is an association of persons doing business in the State, such as the defendants.

Pursuant to the statute, that is, Section 45–05–05, N.D.C.C., the defendants are natural persons as set forth in Rule 4(e) (3) of the North Dakota Rules of Civil Procedure. As is stated in 40 Am.Jur., "Partnership", Section 18, page 138:

"Other courts, while recognizing that businessmen regard a partnership as possessing some of the attributes of a sepa-

rate entity, deny that in law a partnership is a legal entity, separate and distinct from its members. The Uniform Partnership Law seems to adopt this latter theory, in defining a partnership as 'an association of two or more persons to carry on as co-owners a business for profit.' * * * "

■ Further, in the case of People ex rel. Badische Anilin & Soda Fabrik v. Roberts, 152 N.Y. 59, 46 N.E. 161, that court has held that a foreign corporation, by becoming a special partner in, and contributing to the capital of, a limited partnership in New York is doing business in the State of New York. The rule concerning the sufficiency of service of process is stated in the case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, 1061, as follows:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, 572. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283, 132 A.L.R. 1357. See Holmes, J., in McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, 609, L.R.A. 1917F, 458. Compare Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 87 L.Ed. 777, 781, 783, 145 A.L.R. 1113. See Blackmer v. United States, 284 U.S.

421, 52 S.Ct. 252, 76 L.Ed. 375; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170."

Furthermore, Webster has defined "business" as being that which one has to do, or should do; something that is "the affair or concern" of a person; a mercantile transaction or traffic in general. Grand Forks Herald v. Lyons (N.D.), 101 N.W.2d 543, 547.

The word "any" is a general word and may have a diversity of meanings, its meaning in any particular case depending largely upon the context and subject matter of the statute or instrument in which it is used. Catholic Order of Foresters v. State, 67 N.D. 228, 271 N.W. 670, 676, 109 A.L.R. 979.

Likewise, 3 C.J.S., page 1401, note 2, says:

" 'The adjective "any" * * * precludes all limitation upon the kind or class * * * intended to be included.' Stout v. Simpson, 124 P. 754, 756, 34 Okl. 129."

Further, 3 C.J.S., at page 1403, states that the word "any" also includes "any business". Neff v. Gorman, 303 Pa. 186, 154 A. 293, 295.

■ The case of Warren People's Market Co. v. Corbett & Sons, 114 Ohio St. 126, 151 N.E. 51, is not applicable to the factual situation in the case at bar. We therefore find that the trial court was correct in determining that the court has jurisdiction in personam and that proper service had been made upon the defendants, pursuant to the provisions of Rule 4(e) (3) of the North Dakota Rules of Civil Procedure.

The next issue to be determined on this appeal is whether the trial court erred in failing to honor the affidavit of prejudice. The record shows that there were two affidavits of prejudice which were signed

by one of the attorneys for the defendants and both of said affidavits are dated January 6, 1966. This particular action was commenced in June 1964 and a hearing on a motion by the defendants was held before the Honorable Harold Hager, Judge of the District Court, at Grand Forks, North Dakota, on February 11, 1965, and certain exhibits were admitted in evidence. Thereafter, the attorneys for the plaintiff and the defendants filed briefs with the Honorable Harold Hager and on July 12, 1965, an order was signed by Judge Hager providing that service of process upon Roger LaFontaine constituted due and personal service upon the defendants and the defendants' motion to dismiss for lack of jurisdiction was in all things denied. The record further shows that a motion was made by the attorneys for the defendants on September 23, 1965, in which the defendants requested that they be permitted to file a proposed amended answer and counterclaim, together with a demand for a jury trial. The court by its order permitted the service and interposing of the amended answer and counterclaim but denied the demand for a jury trial. Further, the affidavits show that a continuance of the case was granted to the defendants by Judge Hager from the month of October 1965 and that the trial was indefinitely postponed. The record further shows that the case had been properly filed and that issue had been joined so that the same was ready for trial at the October 1965 term of the District Court of Grand Forks County, North Dakota. The affidavit of prejudice was first filed January 11, 1966, with the clerk of the District Court of Grand Forks County, North Dakota, but the same was not forwarded to the Supreme Court until April 28, 1966. The clerk of the Supreme Court returned the affidavit of prejudice to the clerk of the District Court of Grand Forks County, North Dakota, because it did not comply with the statute.

■ Section 28–13–01, N.D.C.C., provides that the affidavit shall be filed after issue is joined and before the opening of any regular, special, or adjourned term at which the cause is to be tried. The affidavit was filed approximately three months after the opening of the October 1965 term of the District Court of Grand Forks County and therefore was not considered by this court This court has held that an affidavit of prejudice directed to the judge of the district court and not filed before the commencement of the term at which the case is to be tried is of no effect. Stockwell v. Crawford, 21 N.D. 261, 130 N.W. 225. This court has further held that an affidavit of prejudice filed after the opening of a term of court, but before the date to which an adjournment is taken, is not filed within the time limit and may be disregarded by the court. Grabau v. Nurnberg, 39 N.D. 57, 166 N.W. 508. We therefore conclude that the affidavit of prejudice was not filed on a timely basis and that the judge was correct in disregarding the same.

The third specification of error is whether the trial court erred in failing to allow the counterclaim or setoff against the rent.

■ The issues to be determined under the third specification of error are several in number. The first is whether the defendants asserted a claim against the plaintiff in this action. The pleadings of the defendants specifically show that they set up an answer and counterclaim to the plaintiff's cause of action. Such pleading is required, pursuant to Rule 13(a), North Dakota Rules of Civil Procedure. The defendants' pleadings raised in issue the matter of damages and the same is so fundamental no citations are required.

The second issue to be determined is whether the defendants properly proved their damage claim, which was alleged in their answer and counterclaim. A review of the record indicates that there are two pertinent provisions in the lease, designated as Plaintiff's Exhibit No. 1, which provide:

"TO HAVE AND TO HOLD, the said premises just as they are, without any liability or obligation on the part of

said Lessor of making any alterations, improvements or repairs of any kind on or about said premises for the term of one (1) year from January 1, 1963, for the following purposes, to wit: operating of a parking facility thereon and any ancillary business to the parking lot operation such as a taxicab stand or car rental agency, yielding and paying therefor the rent of a guaranteed minimum of Nine Thousand Dollars ($9,000.00) per year, subject however, to increases as hereinafter referred to.

\* \* \* \* \* \*

"The parking facility shall be delivered complete in all respects by the Lessor including construction, pavement, lights, ticket spitter, time clock, sensor provided however that tenant shall provide their own signs at their own expense."

The record further shows that the defendants did enter into possession of the premises, prior to the time that the parking lot had been completed, on December 5, 1962. Plaintiff has at no time indicated that the defendants entered into possession of said premises at any other date. The record further shows that the plaintiff, by two of its officers, discussed the matter of the completion of the parking facility with one of the defendants and that, in reliance upon said conversation, the defendants entered into possession of the premises.

The plaintiff contends that the defendants, by entering into possession at said time prior to the commencement of the date of the written lease, that is, January 1, 1963, and by remaining in possession until notice of cancellation was served upon them, are liable for the rent for said period of time, especially in view of Section 47–16–13, N.D.C.C., which reads as follows:

"If within a reasonable time after notice from the lessee of dilapidations which he ought to repair the lessor neglects to do so, the lessee may:

"1. Repair the premises himself and deduct the expense of such repair from the rent;

"2. Recover it in any other lawful manner from the lessor; or

"3. Vacate the premises, in which case he shall be discharged from further payment of rent or performance of other conditions."

Pursuant to said Section 47–16–13, and particularly subsection 3 thereof, the defendants are liable for the rent where they did not vacate the premises. Lynder v. S. S. Kresge Co., 329 Mich. 359, 45 N.W.2d 319, 323, 28 A.L.R.2d 440, states:

"Plaintiffs rely on 28 A.L.R. 1454–1455 where the general rule is stated:

'An agreement to repair, even before the commencement of the term, is not to be construed to be mutual with the covenant to pay rent. \* \* \*

\* \* \* \* \* \*

'Where the landlord covenants to make repairs or improvements to the leased premises prior to the commencement of the term, and fails to do so, the tenant may refuse to accept the premises and thereby avoid liability for rent, but if he enters into possession he becomes liable for the rental, subject, however, to mitigation or reduction to the extent of the damage proximately resulting from the breach.' "

28 A.L.R.2d, § 6, page 459, states:

"Covenants in a lease that the lessees accepted said premises in the condition and state of repair that they were then in and that for the entire term the lessors were to have the obligation to keep the roof of the leased premises in good condition and repair mean that the lessees accepted the premises in their then existing condition, subject to the duty of the lessor to see that a roof in good condition and repair was available to them at all times, including the time they were to begin occupancy. Wolfe v. White (1950) [119] Utah [183], 225 P2d 729."

28 A.L.R.2d, § 21, pp. 476–477, states:

"The general rule stated in the original annotation to the effect that in actions

against a tenant for rent due on the demised premises, the tenant may assert a breach of the landlord's covenant to repair in reduction or extinguishment of the latter's claim for rent, whether by setoff, recoupment, or counterclaim depending upon local practice * * * "

Under our practice, that is, Rule 13(a),

North Dakota Rules of Civil Procedure:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

The plaintiff further contends that the defendants by failing to repair the premises and deduct such repairs from the rental have prevented any recovery under subsection 1 of Section 47–16–13, N.D.C.C. It is conceded that the defendants made no repairs and thus do not come within subsection 1 of Section 47–16–13, N.D.C.C. The defendants contend that, pursuant to subsection 2 of Section 47–16–13, they would have a right to recover damages pursuant to the provisions of said section. The defendants further contend that the parking facility was only partially finished in December of 1962; that there was only a partial concrete floor in the basement, and the remainder of the floor was a dirt floor; the drainage in the basement was not properly constructed; the water and dirt accumulated in the parking areas; the exhaust ducts and fans for the removal of fumes from the basement were inadequate and improperly installed; the bumper stops in the parking area were not secured; and the street level area of the parking lot was never completely paved. Thus the issue is whether the defendants did properly prove

their damage claim which was set forth in the answer and counterclaim presented by them.

■ A further review of the record indicates that the defendants attempted to introduce in evidence the 9th Edition of "Percentage Leases", that is, pages 60 and 61 thereof, which pamphlet is published by the National Institute of Real Estate Brokers. The record shows that this particular pamphlet concerns percentage leases and that the defendants used the same in the operation of their parking lots. The plaintiff, through its attorney, objected on a timely basis to the introduction of such pamphlet on the grounds that it was incompetent, irrelevant, and immaterial and, further, that the plaintiff would have no opportunity to cross-examine the author of said pamphlet, and it made other objections. It is determined that the court's ruling on its refusal to accept such pamphlet in evidence was correct.

The defendants further attempted in the record to prove damages pursuant to the alleged loss of profits by virtue of the plaintiff having failed to complete the parking facility in accordance with the provisions of the lease. The evidence in the record does show that the plaintiff did substantially complete the contract for the parking facility. The testimony of Mr. A. L. Ulvedal, who was the contractor for the plaintiff, conclusively shows that there was the removal of an old building from the property, plus the construction of a main floor structure and the office building and the ticket building. A slab of concrete was poured in the basement, plus patching, and a partition was installed for toilet facilities. Some of the existing support columns were removed and the basement floor was sloped for drainage. This work was all completed in December of 1962, except for two callbacks in April and August of 1963. In addition thereto, there were cement stop blocks placed upon the parking facility for the vehicles which would be parked there. The work and the extra work as listed

totaled in excess of $60,000. Further, there were no complaints made by the defendants to the contractor.

Kenneth Odine Bohn, who was an estimator for Lunseth Plumbing and Heating Company, testified that there was a heating system installed, consisting of two runs of steam piping around the perimeter of the basement, and, in February 1963, that a large unit heater was installed, together with a thermostatic control.

The testimony of each of these two individuals, Mr. Ulvedal and Mr. Bohn, was adduced by the defendants and corroborates the testimony of plaintiff that there had been substantial compliance with the lease provisions on the part of the plaintiff and upon a timely basis.

The record further shows an attempt to prove loss of profits based upon the ledger sheets, which the defendants attempted to introduce into evidence for the purpose of showing the gross cash receipts. The defendants' attorneys properly objected to the introduction of such ledger sheets into evidence on the grounds that such records were incompetent, irrelevant, and immaterial, and on the further ground that this was not a percentage lease. The court properly ruled that the ledger sheets should not be introduced in evidence. The burden of proof in an action by a lessee against his landlord for a breach of the latter's covenant to repair is upon the lessee, as in any other action for breach of contract, not only to establish the breach complained of, but also to produce competent, relevant, and material facts to show a substantial loss to him which is the direct and proximate result of the breach complained of. 28 A.L.R.2d § 34, p. 492. Pappas v. Zerwoodis (1944), 21 Wash.2d 725, 153 P.2d 170, held that proof of prospective profits is insufficient to permit recovery.

Viewing all of the evidence, the trial court concluded that the defendants had failed in their burden of proving their damages alleged in their pleadings. In view of the testimony of the parties and of the fact that the witnesses appeared personally before the trial court, who had an opportunity to see and hear them testify and to note their demeanor, and candor or lack of it, the trial court's findings are entitled to appreciable weight. In Parceluk v. Knudtson (N.D.), 139 N.W.2d 864, 874, this court held that on a trial de novo:

"* * * the findings of the trial court are entitled to appreciable weight, especially when based on testimony of witnesses who appeared in person before the court. Pauly v. Haas (N.D.), 84 N.W.2d 302."

It has further been held that loss of profits was insufficient to justify an award of the same where the lessee testified only as to his gross income and although he said he kept books, he did not show his net profit for the period that he operated, or that the gross was all profit to him. Testimony based upon gross receipts is not sufficient proof of damages. Nelson v. Oversmith, 69 Idaho 1, 201 P.2d 747. The record further shows that the defendants attempted to introduce testimony concerning the loss of tenants. There was inadequate proof concerning the loss of profits through loss of tenants, as the record further shows that the two tenants who did testify on behalf of the defendants continued to lease from the defendants during nearly the entire period of time and that neither of them had any complaints. This court has further held, in Platou v. Swanton, 59 N.D. 466, 230 N.W. 725, 728:

"Where lost profits are recoverable, however, the amount must not be left to speculation or conjecture. The testimony must show with a fair degree of certainty not only the diminution of income or profit but that it is fairly attributable to the wrong complained of. Matzger v. Arcade Building & Realty Co., supra [102 Wash. 423, 173 P. 47]; 17 C.J. 757–760, 786. A careful examination of the record in the instant case leads us to the conclusion that the diminution of income

testified to was not shown to have resulted from any breach of the defendant's obligations to the plaintiff with the degree of certainty which the law requires. The plaintiff should have been required to establish with a greater degree of certainty than he did the responsibility of the defendant for the loss complained of. As the record stands this element of damage is too speculative."

It is further conceded that the lease was prepared by one of the defendants, that is, by William W. Fink, a practicing attorney, and that accordingly any uncertainty in the lease should be interpreted against the party who prepared the same.

Section 9–07–19, N.D.C.C.; Shimek v. Vogel (N.D.), 105 N.W.2d 677; City of Granville v. Kovash, Inc. (N.D.), 118 N.W. 2d 354. In view of the trial court's findings, which are entitled to appreciable weight, we conclude from a review of the entire record and the evidence which was introduced that the defendants failed to prove the allegations set forth in their answer and counterclaim and which the defendants during the progress of the trial stated to be a setoff.

The judgment is accordingly affirmed.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.